JOSEPH RUSSELL *vs.* CALEB W. LORING & others.

If a will gives to the executor named therein so much stock or other property as will be sufficient to produce the annual sum of two thousand dollars, upon the trust that he shall cause the same to be transferred into his own name, and pay the dividends, interest o income arising therefrom to A. B. during his life, and no provision is made for the contingency of the income's exceeding or falling below that sum, and the residue of the testator's property is given at once to other legatees, by a provision which refers to the property " given to A. B. for life," and disposes of it after his death; and the executor under the same has in good faith transferred to himself as trustee an amount of property deemed by him to be sufficient surely to produce that amount, and provide for the expenses of the trust, and for possible loss or depreciation of the trust fund, and such amount was acquiesced in by the parties in interest, and no attempt has been made to have this transfer set aside, or the amount modified, A. B. is entitled to receive from the trustee the whole amount of the income of the fund so transferred, although it exceeds two thousand dollars, and may maintain a bill in equity to enforce the payment thereof.

An agreement by the parties to a suit in equity to submit the case on facts agreed, is a waiver of objections to the form of proceeding, unless such objections are expressly reserved; and the objection that the plaintiff has a plain, adequate and complete remedy at law cannot be raised for the first time on the final hearing, on facts agreed, when not stated in any of the pleadings.

BILL IN EQUITY against trustees and residuary legatees under the will of Mary G. Russell, deceased, to enforce the payment to the plaintiff of an accumulation of surplus income from a trust fund therein created.

The following facts were agreed : On the 26th of April 1836, Mary G. Russell, the plaintiff's wife, having under the will of a former husband the right to dispose of certain property by will, made her last will, which was assented to in writing by the plaintiff, and contained the following provision :

" *First.* I give and bequeath to my executor hereinafter named so much of any stock standing in my name, or in that of the trustee under the will of my said husband, at the time of my decease, or so much of any property in the hands or management of said trustee, as will be sufficient to produce the annual sum of two thousand dollars, upon the trust that my said executor do and shall cause the said stock or other property to be transferred into his own name, and do and shall at his

discretion pay the dividends, interest or income arising therefrom to my beloved husband, Joseph Russell, during his own life, and for his use and benefit; and from and after the decease of my said husband my will is, and I do hereby direct, that said stock or other property hereinbefore given for his benefit shall sink into and become part of my residuary estate, and shall go and be applied according to the provisions hereinafter made of the same."

After certain specific legacies, the residue of the property was disposed of by a clause commencing as follows:

" *Thirdly.* As to all the rest of my property, including that given to my husband for life, my will is that in the settlement of my estate the part not hereinbefore devised for the use of my said husband, and, immediately after his decease, the part so bequeathed to him, be divided into two equal parts, by the parties, or by the judge of probate for the time being, to be disposed of in the manner following," &c.

The testatrix died in November 1836, and Josiah Quincy, Jr., the executor and trustee named therein, accepted the trusts, and as executor transferred to himself as trustee property appraised at $40,000. This sum was not taken by him in the expectation that that precise amount, or any sum on which he might fix, would during a series of years produce the exact net income of $2000 a year; but with the intention to take a sum which should surely produce that amount, and at the same time provide for the charges and expenses of managing the trust, and for possible loss or depreciation of the trust fund. No objection to the amount of this fund was made at the time it was set apart, or at the time of the settlement of Quincy's account as executor. Quincy resigned his office of trustee in March 1852, rendering no account in the probate court, and at that time the accumulation of the net income of the fund, over and above the $2000 a year, which had been regularly paid to the plaintiff, amounted to $1103.65'; which, together with the principal of the fund, he paid over to his successors, the defendants, from whom the plaintiff first learned of the existence of the surplus. The new trustees continued to pay to the plaintiff $2000 a year,

until his death in May 1858, not deeming it safe without an order of court, to comply with his request to pay to him the entire income of the fund. At the plaintiff's death, the accumulation amounted to about $3000, and this suit is now prosecuted by his administrator.

*W. Dehon & J. D. Bryant*, for the plaintiff.

*C. P. Curtis, Jr.* for the defendants, cited *May* v. *Bennett*, 1 Russ. 370 ; *Davies* v. *Wattier*, 1 Sim. & Stu. 463 ; *Arundell* v. *Arundell*, 1 Myl. & K. 316 ; *Brooks* v. *Brooks*, 11 Cush. 18 ; *Conant* v. *Kendall*, 21 Pick. 36.

DEWEY, J. The question at issue between these parties is, whether Joseph Russell, the husband of the testatrix, has under her will an annuity of $2000 fixed and certain in its amount, or under the provisions of the will directing a portion of her stocks or other property to be placed in trust for him and certain payments to be made to him, he was to receive the entire income of the fund thus set apart for his benefit.

It would have been easy to declare a bequest of the former character, making the same payable by the executor absolutely out of her estate generally, or to place in the hands of her executor or a trustee funds chargeable with the payment of such an annuity. It would have been equally competent for her to set apart such an amount of her estate as in the opinion of her executor might be deemed the proper amount substantially to effect that object, and to authorize her husband to receive the entire income arising therefrom. The question is, which of these modes was selected by the testatrix, as such intent may be gathered from the language of her will.

Although the question is not perhaps entirely free from doubt, yet, as it seems to us, the bequest falls more properly within the latter class. It is not the case of an ordinary bequest of a simple annuity directed to be paid by her executors. It is a case where the bequest was not intended to interfere with the full and final disposition of her estate, independently of the property set apart for the benefit of her husband. The residue of the property was at once to pass to other devisees. No provision exists in the will for adding any surplus of the income of the

fund to the increase of the fund, nor for supplying any deficiency, if it failed to produce $2000. In the bequest to the other devisees, she describes this investment as property " given to my husband for life." She also directs that, " immediately after his decease, the part so bequeathed to him be divided," &c. But it is more particularly the language of the bequest to him that leads us to adopt the proposed construction of this will favorable to the plaintiff. After setting apart a fund for his benefit, she directs her trustee to " pay the dividends, interest or income arising therefrom to my beloved husband, Joseph Russell, during his own life, and for his use and benefit; and from and after the decease of my said husband my will is, and I do hereby direct, that said stock or other property hereinbefore given for his benefit shall sink into and become part of my residuary estate," &c. Here manifestly the testatrix assumes that the bequest directing an investment is a gift of property for the use of her husband, and that the specific property thus given will remain until his decease, and then pass to her residuary devisees. But the controlling clause of the will is that directing the trustee " to pay the dividends, interest or income arising therefrom " to her husband during his own life, and for his use and benefit. Construing this clause literally, it is a direct gift to the husband of the entire income of the fund thus set apart for his. use. It is this clause which particularly distinguishes this case from that of *May* v. *Bennett*, 1 Russ. 370, a case in some respects much like the case at bar. In that case, the testator directed his executors " to lay out in their own names, and in what government security they pleased, as much money arising from his estate as would produce the annual interest of £54 12*s.* per year for the sole use of my wife, which interest per year my said wife shall receive during her life." An investment was made in government stocks sufficient at the time to produce an annual interest of the sum named, but subsequently failing so to do, upon an application to the master of the rolls by the wife to require the executor to continue the yearly payment of the sum of £54 12*s.*, he held she was entitled to receive that sum annually; and if the investment made by the executor did not produce that sum

annually, the legatee was entitled to have it made up; and if there were no other funds of the estate to be thus applied, a sale of a part of the stock purchased for the investment should be sold and applied to make up any deficiency of interest that might exist.

It will be seen there was no other direction there but for the payment of £54 12s. In the case before us, we find something more; and we find other parts of the will aiding us in the construction we put upon the will.

The court are of opinion that, looking at all the parts of this will and giving proper effect to its language, it must be construed as authorizing the executor to set apart so much of the property of the testatrix as would be sufficient to produce the annual sum of $2000; and that when such stocks or other property had, in pursuance of the will, been thus set apart, the husband was entitled to receive to his own use the entire dividends, interest or income arising therefrom, during his own life.

As to the amount of the fund that was set apart by the executor, there is no suggestion made that it was not done in good faith, or that it was so extravagantly large as to be objectionable on that account. The testatrix placed confidence in the executor to act upon this subject, and to exercise some discretion in reference thereto; and there has been no attempt to set the same aside or to modify it, by application to any supervisory tribunal.

The respondents, in their arguments submitted to the court, have urged, as an objection to the maintenance of this bill, that the plaintiff has a plain, adequate and complete remedy at law. To this objection several answers may properly be given: 1st. It is a suit "for enforcing and regulating the execution of a trust," and is therefore a proper case for bill in equity. Rev. Sts. *c.* 81, § 8. 2. The parties, by agreeing to submit the case to the determination of the court upon a statement of facts, waive all objections to the forms of proceeding, unless that point is expressly reserved by them. 3d. The objection that the plaintiff has a plain and adequate remedy

11 *

at law, comes too late when raised for the first time on the final hearing on the merits, where the court have jurisdiction of the subject matter. *Clark* v. *Flint*, 22 Pick. 237. Such objection should be made by plea or demurrer, or should be distinctly stated in the answer of the defendant. *Wiswall* v. *Hall*, 3 Paige, 313.