In the Matter of the Accounting of John Sloane et al., as Executors of and Trustees under the Will of Nelson S. Clark, Deceased, Appellants.

Lillian W. Clark, Appellant; William G. Clark et al., Respondents.

(Argued June 11, 1929; decided July 11, 1929.)

*Irving Smith, Jr.*, for executors and trustees, appellants. The provisions for capitalizing the specified net incomes are mandatory and refer specifically and exclusively to the size of the funds. (*Matter of Durand*, 250 N. Y. 45; *Matter of Buechner*, 226 N. Y. 440; *Matter of Sproule*, 42 Misc. Rep. 448; *New York Life Ins. & Trust Co.* v. *Sands*, 24 Misc. Rep. 102; *Matter of Clark*, 120 Misc. Rep. 530.) All the net income from these trust funds is payable to the life beneficiaries. (*Matter of Parker*, 118 Misc. Rep. 121; 204 App. Div. 876; 236 N. Y. 583; *Russell* v. *Loring*, 85 Mass. 121; *Matter of Hartley*, 90 Misc. Rep. 534; 171 App. Div. 912; *Matter of Von Keller*, 28 Misc. Rep. 600; *Matter of Scott*, 204 N. Y. Supp. 478; *Matter of White*, 125 N. Y. 544; *Carr* v. *Smith*, 25 App. Div. 214; 161 N. Y. 636.)

*Philip S. Hill* for Lillian W. Clark, appellant. The courts below violated the rule that the plain language of the will must be given effect. (*New York Life Ins. & Trust Co.* v. *Sands*, 24 Misc. Rep. 102.)

*William F. Unger* and *Edward Gluck* for William G. Clark et al., respondents. The language of the will is clear that the life beneficiaries should receive net annual incomes of no more than the amounts specified therein. Any income in excess of those amounts should be paid to the residuary legatees. (*Matter of Kohler*, 231 N. Y. 353.)

*George Frankenthaler* for John M. Clark et al., respondents. The provisions of the will, taken as a whole, show that the testator's intention was to provide a net annual income of $25,000 for his widow, $2,000 for his sister and $2,000 for his son Nelson. It was not his intention to give the entire net income to these three beneficiaries. (*Matter of Gallien*, 247 N. Y. 195; *Matter of White*, 125 N. Y. 544; *Carr* v. *Smith*, 25 App. Div. 214; 161 N. Y.

636; *Phillips* v. *Davies*, 92 N. Y. 199; *Matter of Farmers Loan & Trust Co.*, 189 N. Y. 202; *Eidt* v. *Eidt*, 203 N. Y. 325; *Van Nostrand* v. *Moore*, 52 N. Y. 12; *Tilden* v. *Green,* 130 N. Y. 29.)

LEHMAN, J. Nelson S. Clark died on April 28, 1925. In his last will and testament he provided, after a number of specific bequests: " I give, devise and bequeath all the rest, residue and remainder of my property, real personal and mixed, and wheresoever situated, to my Executors hereinafter named and to their successor or successors, in trust, nevertheless for the uses and purposes as follows: that is to say: * * * 3. To set aside sufficient of the principal thereof to produce at the rate of five per cent (5%) a net annual income of Twenty-five Thousand Dollars and to hold, manage, invest and reinvest the same and to keep the same well and securely invested, and to receive the rents, issues, income and profits therefrom, and to pay the net income thereof in equal installments to my said wife, Lillian Walker Clark, so long as she lives, and at her death to divide the principal and accumulations thereof into four equal parts, and to pay over — One of said parts to my said daughter Gladys Clark Mertz, etc. * * *." He also provided for the creation of two similar trusts sufficient " to produce at the rate of five per cent a net annual income of Two Thousand Dollars." The net income of one of these funds was to be paid to a sister of the testator; the net income of the other fund to a son. Evidently anticipating that, after three funds sufficient to produce at the rate of five per cent net incomes totalling $29,000 were set aside, a part of his estate might still remain undisposed of, the testator provided that " all the rest, residue and remainder of my estate I give, devise and bequeath in equal parts, share and share alike, to my said children Gladys Clark Mertz, Dorothy Gertrude Price and William Calloway Clark * * * and to

the lawful issue me surviving of my said son Nelson Sherwood Clark, Jr."

The executors proceeded to administer the estate, paid legacies, debts, administration expenses, and necessary charges, and on October 26, 1926, set up three trust funds which were intended to comply with the provisions of the will. The assets of the estate consisted in large part of stock in closely held corporations in which the testator was interested. The will expressly permitted the executors and trustees in the exercise of their discretion to allow the whole or part of the estate to remain invested as the same might be invested at the time of the decease of the testator. Accordingly, the executors allocated to the various trust funds corporate securities which had been acquired by the testator.

To produce at the rate of five per cent net incomes totalling $29,000 would require capital funds of more than $580,000. The value of the entire estate at the death of the testator, as fixed in the transfer tax proceedings, after payment of specific legacies, debts, and other charges, was much less than this sum. The executors at the time they set aside the three funds made no independent estimate of the value of the securities. They accepted the values fixed previously in the transfer tax proceedings. Even though according to these values the three funds set aside by the executors amounted to much less than $580,000, the net income derived from dividends on corporate stock is much more than $29,000.

Upon the accounting of the executors and trustees two serious questions have been raised by objections interposed by the residuary legatees: *First;* are the life beneficiaries of the three funds entitled to any excess of income over $29,000? *Second,* did the trustees have the right in setting aside the funds to adopt the values fixed, as of the date of the death of the testator, in the transfer tax proceedings, or were they under the duty to fix

such value independently, at the time they set aside the funds?

To some extent the two questions must be considered together. The learned Surrogate has found in the language of the will evidence of a dominant purpose of the testator to provide a net income in the amounts mentioned for the benefit of the three persons specifically named by him. In effect, the testator, according to that construction, intended to give to each beneficiary an annuity for life, and the three funds which the executors and trustees were directed to set aside were intended merely to secure payment of the annuities. The duty of the trustees, the Surrogate decided, was confined to setting aside and holding sums sufficient for that purpose. If they set aside more than was necessary, the excess income of the funds must pass to the residuary legatees, and they might at any time apply to the court for a reduction of the funds held and a distribution of the excess.

Under that construction the value of the securities at the time the funds were set up becomes of minor importance. The trust funds must be at all times large enough to make certain that they will produce an income sufficient to pay the annuities. As circumstances change, the funds may be reduced or increased. (*Griffen* v. *Keese*, 187 N. Y. 454; *Matter of Kohler*, 231 N. Y. 353.) Accordingly the objecting parties in the court below withdrew their application for a revaluation of the securities or for a present capital distribution subject to the determination of the Surrogate that they were entitled to all income in excess of the " annuities."

The construction placed upon the will by the courts below does violence to its plain language. In *Matter of Kohler* (*supra*), upon which the Surrogate relied largely for authority, the language of the will was entirely different. There the will directed that the trustees set aside a sum " sufficient for the purpose, and to hold the

same in trust for my daughter, Olga V. * * *, paying over the sum of twenty-five thousand dollars per annum, payable semi-annually during her natural life," etc. There was no direction in the will for the payment to the daughter of any sum beyond $25,000. Under no possible construction of the will could the daughter be entitled to more than that sum, and an examination of the record on appeal shows that the daughter made no such claim. The contest, there, over the surplus income was between the residuary legatees and those who would be presumptively entitled to the next eventual estate in the funds set aside to produce the life annuities. A majority of the court held that the trustees' authority was confined " strictly to set aside a trust fund sufficient to produce * * * twenty-five thousand dollars," and that, therefore, the remaindermen had no interest in any fund in excess of the necessary capital, or in the income derived from such excess. In the case now under consideration, the language is entirely different.

Here, the will does not place upon the executors and trustees in express language the duty " strictly to set aside a trust fund sufficient to produce twenty-five thousand dollars." They were required " to set aside " a fund " *sufficient* * * * *to produce at the rate of five per cent* * * * Twenty-five Thousand Dollars." In the event, the income of the fund might of course exceed or fall below the rate of five per cent. The testator made no express gift of an annuity or income of $25,000, and gave no express direction for the annual payment by the trustees of that amount, but directed that the " net income " of the fund set aside should be paid over to the life beneficiary.

We cannot find from the circumstances of the testator or from any other part of the will any intention on the part of the testator that his directions should not be carried out according to their letter. Doubtless he intended that the beneficiaries should receive approxi-

mately the income that he indicated and he directed how that intention should be carried out. He may have regarded a return of five per cent as reasonably safe. He might have provided that the funds should, if possible, be invested in securities which would bring approximately such return. He chose, instead, to permit the trustees to hold his own investments intact. These investments might produce more or less than five per cent. The safety of the return would normally be reflected in the value of the securities. If the trustees decided to sell the assets of the estate and to invest the proceeds at five per cent, they might do so; if they chose to hold the testator's investments intact, the return might in some years be less and in other years more than five per cent. Choice was left to the trustees, but they were required in any event to set aside a part of the residuary estate sufficient to produce *at the rate of five per cent* an income of $25,000, and then to pay over the net income of the fund, however invested, to the life beneficiary. Whatever choice might be exercised by the trustees, the life beneficiary was to obtain the income derived from a fund sufficient to produce at the rate of five per cent an income of $25,000. The risk of lesser income in lean years would then balance the possible gain from greater income in fat years, and at the death of the life beneficiary the remaindermen would receive a fund measured in accordance with the directions of the testator, which would not fluctuate with the fluctuations of income. (See *Russell* v. *Loring*, 85 Mass. 121.)

It became the duty of the executors to set aside the three funds, when legacies, charges and expenses were met. They attempted to comply with this duty in October, 1926, adopting then the values placed upon the assets of the estate in the transfer tax proceedings. The value of the assets of the residuary estate at the time

the funds were set aside, or should have been set aside, may have been larger than their value at the death of the testator. The executors were bound to fix the value at the time when they established the funds. Otherwise, they could not comply with the direction of the testator to set aside funds sufficient to produce at the rate of five per cent net annual incomes of $29,000. This duty they did not properly perform. They must do so now, allocating to the three funds, if the residuary estate is sufficient, assets of a capital value, as of October, 1926, sufficient at the rate of five per cent to produce net annual incomes totalling $29,000.

If the residuary estate is insufficient for that purpose, then the entire residuary estate must be ratably divided between the three funds, and the life beneficiaries would be entitled to the entire income. If the residuary estate is more than sufficient, then the trustees must divide the assets of the estate, in fair and equitable manner, between the trust funds and the residuary legatees. The accrued income must then be apportioned in accordance with the amount of said trusts, and the amounts payable to the residuary legatees. (*Matter of Kohler, supra*, p. 373.)

The order of the Appellate Division and the decree of the Surrogate's Court should be reversed, with costs to the appellant payable out of the estate, and the proceeding remitted to the Surrogate's Court for entry of a decree in accordance with this opinion.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.