In the Matter of the Application of ALICE G. VANDERBILT, as Surviving Trustee of the Trust Created by the Seventh Article of the Last Will and Testament of CORNELIUS VANDERBILT, Deceased, for the Judicial Settlement of Her Account of Proceedings as Such Trustee and for the Construction of the Seventh, Eighth and Seventeenth Articles of Said Last Will and Testament.*

ALICE G. VANDERBILT, Petitioner, and Others, Respondents; GLORIA LAURA MORGAN VANDERBILT, an Infant, etc., by GEORGE W. WICKERSHAM, the General Guardian of Her Property, and Others, Appellants.

First Department, June 13, 1930.

---

* Affg. 134 Misc. 574.

*Thomas B. Gilchrist* of counsel [*George W. Wickersham* and *Luke B. Lockwood* with him on the brief; *Cadwalader, Wickersham & Taft,* attorneys], for the appellants Gertrude Vanderbilt Whitney and others. *George W. Wickersham,* special guardian for Cornelia Szechenyi and others, infants.

*James R. Deering* of counsel [*Deering & Deering,* attorneys], for the appellant James R. Deering, as executor, etc., of Reginald C. Vanderbilt, deceased.

' *John Godfrey Saxe,* special guardian for Alfred G. Vanderbilt, Jr., and George Vanderbilt, appellants.

*Roy C. Gasser,* for the appellants, respondents, Frederick W. Vanderbilt and others, as executors, etc., of Alfred G. Vanderbilt, deceased.

*Emery L. Ferris* of counsel [*Anderson, Gasser, Ferris & Anderson,* attorneys], for the respondent Alice G. Vanderbilt, as surviving trustee.

SHERMAN, J. Cornelius Vanderbilt died testate on the 12th day of September, 1899, and his will was admitted to probate by the Surrogate's Court of New York county on the 8th day of November, 1899.

By article 7 of his will he gave and bequeathed to his wife " the annual income or sum of Two hundred and Fifty thousand dollars * * * arising from securities to be selected from my estate and set apart by my Executors " to be held in trust for that purpose. By article 8 he directed that at the death of his wife the principal set apart " to create the annual payment of Two Hundred and Fifty thousand dollars " should be given to four of their children, or if any of them should then be dead, to his or her issue, in such proportion as Mrs. Alice G. Vanderbilt (the present surviving trustee) should appoint, or in default of such appointment, in equal shares *per stirpes*. By article 17 he devised and bequeathed his residuary estate to his executors in trust to pay the net income thereof to his son Alfred G. Vanderbilt, until he arrived at the age of thirty years and then to put him in full possession of one-half thereof, and thereafter to pay to him the net income of the remaining one-half until he arrived at the age of thirty-five years and then to put him in possession of such remaining one-half. Alfred G. Vanderbilt attained the age of thirty-five years in 1912, and his interest as residuary legatee then vested absolutely in him.

Articles 7 and 8 and the pertinent provisions of article 17 of the will are as follows:

" *Seventh.* I also give and bequeath to my said wife the annual income or sum of Two hundred and Fifty thousand dollars, payable to her quarterly, to be computed from the date of my death, and arising from securities to be selected from my estate and set apart by my Executors, and which I give to them to be held in trust for that purpose. If any such securities should be paid off during the continuance of this trust, the amount received therefrom shall be reinvested in similar railroad or other securities to be held by said trustees in place of the securities so paid off.

" *Eighth.* At the death of my wife the principal set part under the Seventh Clause of my Will to create the annual payment of Two hundred and Fifty thousand dollars to my wife, shall be given to our children, Gertrude, Alfred G., Reginald C. and Gladys Moore; and if any then be dead, to their issue, in such proportions and amounts as my said wife may direct or appoint in her last Will and Testament, and in default of such appointment the same shall be divided among our said four children equally, share and share alike, the issue of any such child or children to take its parent's share, *per stirpes* and not *per capita*. Any child born to us after

my death shall be entitled to share in this division, and in case of the death of either of said children, without issue, the share of such child is to go to the survivors of such children in equal shares."

"*Seventeenth.* All the rest, residue and remainder of all the property and estate, real, personal and mixed, of every description, and wheresoever situated, of which I may die seized or possessed, or to which I may be entitled at the time of my decease, including all lapsed legacies and the principal of any annuities which may terminate and any part of my estate which may not have been effectually devised or bequeathed, or from any other source, I give, devise and bequeath to my Executors hereinafter named, and the survivors and survivor of them, IN TRUST, to hold said estate and invest and reinvest the same and to collect the rents, issues, income and profits therefrom for the use of my son Alfred G., and to apply so much of said net income as may be in their judgment advisable, to his support, maintenance and education, and for the care and maintenance of his property during his minority, and to accumulate any surplus income, such accumulations to be paid to him when he arrives at the age of twenty-one years and thereafter to pay the net income of said estate to him as received until he arrives at the age of thirty years when he shall be put in full possession of one-half of the portion of said estate to be set apart for that purpose by my Executors and the survivors of them. And upon further trust thereafter to pay to my said son Alfred G. the income from the balance remaining of said estate until he shall arrive at the age of thirty-five years when he shall be put in possession of the balance of said trust estate, and the said Trustees shall be discharged from any and all liability and responsibility in respect thereof."

Shortly after the death of the testator, his executors set apart out of his estate certain stocks and bonds to create the trust fund for the payment of $250,000 annually to his widow and placed these securities in a separate box labelled "Annuity." With occasional changes, the same securities have ever since continually held. For several years the income was insufficient to pay the $250,000 annuity, due to the fact that personal property taxes were assessed against the trust by the city, but thereafter the income appears to have steadily increased until at the date of the account, October 31, 1928, which is the first accounting, the surplus income amounted to $1,355,159.98.

The petition of Mrs. Alice G. Vanderbilt, testator's widow and sole surviving trustee, prays that the court construe the will and

determine to whom the excess net income of the trust is payable and the disposition to be made thereof.

The executors and children of Alfred G. Vanderbilt, the deceased residuary legatee, seek to have the accumulated excess net income, over and above the $250,000 annual payment, declared due and payable to the executors of the will of Alfred G. Vanderbilt, deceased, and also demand that the excess principal of that fund, in so far as it exceeds the amount necessary to produce said annuity, should likewise be placed in, and be made a part of, the said residuary estate.

The learned surrogate has construed article 7 of the will as reflecting the dominant purpose of the testator to provide an adequate fixed annuity for Mrs. Vanderbilt, and has held that as the fund set apart has for many years past produced and now produces an amount largely in excess of the annual payment of $250,000 as well as the taxes and expenses chargeable against said fund, the surplus accumulated income is now payable to the executors of Alfred G. Vanderbilt, deceased, residuary legatee under article 17 of the will; that during the future term of the trust such surplus income is payable to such executors; that only so much of the capital of the fund shall be retained as is necessary to produce the annual payment of $250,000 with a proper margin of safety, and that the excess thereof shall also be paid over to said executors.

All the remaindermen of said trust fund, except the children of Alfred G. Vanderbilt, who are beneficiaries of his residuary estate, have appealed from that decree. The executor of the will of Reginald C. Vanderbilt, a deceased remainderman, has also appealed. The surrogate, as shown by the decree, reduced the amount of the capital fund to yield an annual income of $280,000 (the fund having so increased that in 1928 it produced a return of $345,740). From this portion of the decree the executor of Alfred G. Vanderbilt, deceased, and the infant children of Alfred G. Vanderbilt, by their special guardian, have appealed, contending that the fund even as diminished is still unreasonably large and should be further cut down, the special guardian contending for a further reduction so that the annual income therefrom should yield $260,000.

The principal contention on this appeal is raised by the remaindermen, and questions those provisions of the decree which reduce the capital fund of said trust and allocate to the executors of the residuary legatee the accumulated surplus income therefrom as well as future surplus income.

It is clear from the language of article 7 that the testator intended that his wife should receive a fixed, annual payment of $250,000, and

that, to accomplish this ruling purpose, the setting apart of securities to produce such payment was incidental. It is equally certain that he did not intend that this annual income should vary. There is nothing in the article which in any way limits the amount of that annual payment to the amount of income derived from the securities first set apart by the executors.

The surrogate having properly determined that the dominant purpose of the testator was to give his wife this definite, fixed, annual income, his decree is supported by controlling authorities in this State.

In *Matter of Kohler* (231 N. Y. 353), where the will directed the trustees to set aside a sum sufficient for the purpose of paying an annual sum of $25,000, CHASE, J., discussed the practical impossibility of setting aside an amount for a trust which will produce exactly the income required, and added (p. 373): " It may be assumed that the trustees in forming the trusts will make reasonably sure that the amount set aside for the trusts will be sufficient under all reasonable circumstances to provide a net income sufficient to make the payments to the widow and the three daughters respectively." That opinion, at its conclusion, states (p. 377): " A majority of my associates, however, are of the opinion that, inasmuch as the trustees are only entitled strictly to set aside a trust fund sufficient to produce an annual income of $25,000 in the case of each beneficiary named, any income which may have accumulated between March 16, 1915, and the date when the trusts are actually set aside, or which may be produced after the trusts are set aside in excess of what has been required or may be required to make said annual payment of income provided by the will, should be treated as part of the net residuary estate and be paid over under clause eighteen thereof."

In *Matter of Clark* (251 N. Y. 458, 464) the court, in commenting upon *Matter of Kohler* (*supra*), said: " The contest, there, over the surplus income was between the residuary legatees and those who would be presumptively entitled to the next eventual estate in the funds set aside to produce the life annuities. A majority of the court held that the trustees' authority was confined ' strictly to set aside a trust fund sufficient to produce   *   *   *   twenty-five thousand dollars,' and that, therefore, the remaindermen had no interest in any fund in excess of the necessary capital, or in the income derived from such excess."

In reaching his decision, the surrogate followed those authorities. Appellants contend, however, that the surplus income from the trust fund established for the benefit of Mrs. Vanderbilt was not disposed of under the will and that, therefore, it passes under section

63 of the Real Property Law (as amd. by Laws of 1916, chap. 364) to the persons presumptively entitled to the next eventual estate. We hold that the testator did not die intestate as to any of his property. Section 63 does not apply to the situation here presented. The comprehensive language of article 17 of the will forbids recourse to that statute. That residuary article embraces every interest whether known or unknown, immediate or remote, for it included " any part of my estate which may not have been effectually devised or bequeathed, or from any other source, * * *." Under that clause the surrogate was justified in holding that the surplus income passed to the estate of Alfred G. Vanderbilt.

The surrogate likewise had the power to reduce the amount of the fund held to provide the $250,000 annuity. As stated in *Matter of Clark* (*supra*, p. 463): " The trust funds must be at all times large enough to make certain that they will produce an income sufficient to pay the annuities. As circumstances change, the funds may be reduced or increased. (*Griffen* v. *Keese*, 187 N. Y. 454; *Matter of Kohler*, 231 N. Y. 353)." Moreover, in *Griffen* v. *Keese* (187 N. Y. 454), WERNER, J., writing for the majority of the court, said (p. 466): " We entertain no doubt that if the fund, as established, had proven too small to carry out the testator's directions, the executors could have drawn upon the residuary estate to make it large enough, for the residuary estate was to consist only of what remained after the testator's specific directions had been complied with. Logically and reasonably, the converse of that proposition must be sound. Whenever the fund proved to be too large for the real purpose of its creation, either the trustees or the residuary legatees could apply to the court for its reduction, and the transfer of the excess or surplus to the residuary estate, where it properly belongs."

We do not agree with the contention of appellants that the foregoing authorities can be distinguished in their application to the case at bar. It is immaterial whether the fixed, annual income payable out of the fund established by the testator be referred to as an annuity or otherwise. The important factor is testator's dominant and controlling intent and purpose. It was to pay his widow $250,000 annually. The setting apart of the fund was to effectuate that purpose. The fund may be increased or decreased as circumstances require, as long as the amount of the fund is sufficient to carry out that intention. Nor is this view in conflict with *Cochrane* v. *Schell* (140 N. Y. 516). One of the differences between that case on the one hand and this and like cases on the other, is that in the *Cochrane* case the court could not have taken away from the trustees any part of the property expressly

bequeathed to them without remaking the will, for the trust there created embraced the entire residuary estate with an implied direction to hold the accumulated surplus.

We find no reason for further diminishing the amount of the capital of the fund as reduced by the surrogate. It was fixed in his discretion, reflects his caution, and under all the circumstances was a wise and proper disposition.

Accordingly, the decree of the surrogate should be affirmed.

DOWLING, P. J., MERRELL, FINCH and O'MALLEY, JJ., concur.

Decree so far as appealed from affirmed.