In the Matter of the Estate of CLINTON W. BIRD, Deceased.

Surrogate's Court, New York County, December 19, 1935.

*Stewart & Shearer* [*E. S. Stewart* of counsel], for the trustee.

*William B. Dessner,* for Lena Bird, widow.

*Mitchell, Taylor, Capron & Marsh* [*Edwin W. Cooney* and *Edward L. Hunt, Jr.,* of counsel], for Wallis C. Bird, son.

DELEHANTY, S. Deceased died in 1916. He left surviving his widow and son. By his will he devised his residuary estate in trust. The text of the will in part provides:

" (a) I direct my said Trustee to retain as a part of said trust my home in Peekskill, New York, and to permit my said wife, Lena Bird, until her death or re-marriage, and my son, Wallis Clinton Bird, during the continuance of said trust for his benefit, to occupy said premises and I direct my said Trustee to maintain said property at all times in its present good state of repair and to defray the expenses therefor from the income therefrom.

" (b) I direct my Trustee to pay over to my wife, Lena Bird, one-third of the net income from said trust fund annually, until her death or until such time as she shall be married, or until my said son, Wallis Clinton Bird, shall reach the age of Thirty years, which-ever shall first happen."

" (f) I further direct my said Trustee when my said son, Wallis Clinton Bird, shall attain the age of thirty years, if my wife, Lena Bird, be not living, to pay and turn over to my said son, Wallis Clinton Bird, one-half of the entire corpus of said trust and to pay and turn over to my said son, Wallis Clinton Bird, the balance or remainder thereof, when he shall attain the age of thirty-five years, but if, when he shall attain the age of thirty years, my said wife be then living, I direct my Trustee to retain sufficient of the corpus of the said trust to produce an income of Fifteen Thousand ($15,000) Dollars annually, which said income is to be paid over to my said wife, Lena Bird, during her life, or until she shall re-marry, but if she re-marry, then to retain sufficient of the corpus of said trust fund to produce the annual income of Five Thousand ($5,000) Dollars and to pay said Five Thousand ($5,000) Dollars to my said wife,

Lena Bird, annually, during her life, and to pay and turn over to my said son, Wallis Clinton Bird, one-half of the balance or remainder of the corpus of said trust and to turn over the other half of the remainder to my said son when he shall attain the age of thirty-five years, and upon the death of my said wife, if she shall have died before my said son reaches the age of thirty-five years, I direct that one-half of the amount held in trust for her be paid over to my said son absolutely, and that the other half be paid over to him on his attaining the age of thirty-five years, and if she dies after he has attained the age of thirty-five years, then I direct that the whole amount held in trust for her shall be paid over to my said son absolutely."

The son of deceased became thirty years of age in 1930 and then received one-half of the trust fund capital. The trustee accounted and by decree entered June 18, 1931, direction was made as follows:

(In paragraph third): " That the trustee in accordance with the terms and provisions of the will of Clinton W. Bird, deceased, retain, set aside and hold, as a fund to provide the $15,000 annuity for Lena Bird, the securities set forth in paragraph VI, subdivision (b) of the aforesaid affidavit of Thomas H. Wilson setting forth Schedule F as rearranged, and pay the income from said fund to Lena Bird in quarterly instalments until her death or remarriage."

(In paragraph sixth): " That the trustee retain the property located in Peekskill, in the County of Westchester, and left by Clinton W. Bird, deceased, as part of his residuary estate and known herein as ' The Peekskill Property ' for the use of Lena Bird and Wallace C. Bird during the continuation of the trust for Wallis C. Bird, and pay the expenses of the upkeep thereof out of the income of the fund remaining in trust for Wallis C. Bird."

The son of deceased is now thirty-five. The trustee has filed its final accounting and has asked for a construction of the will and an interpretation of the prior decree. It is necessary to determine whether, notwithstanding the attainment of age thirty-five by the son, the trustee must continue to hold sufficient property to provide currently for the expenses of maintaining the Peekskill property; and to determine whether the trustee may add to the fund which by the terms of the prior decree was set up to insure payment of the annuity of $15,000 to deceased's widow.

The son contends that the right of the widow to occupy the Peekskill property ceased upon his attainment of age thirty-five. He objects to any reservation by the trustee of any of the trust capital for maintenance of the Peekskill property. He contends as well that the decree of June 18, 1931, is *res adjudicata* in respect of the annuity fund.

It is an established principle of law that when a gift in clear and decisive terms is made in a will the extent thereof will not be deemed cut down by language subsequently appearing in the will unless such subsequent language admits of no other interpretation. (*Tillman* v. *Ogren*, 227 N. Y. 495; *Clay* v. *Wood*, 153 id. 134; *Rosebloom* v. *Rosebloom*, 81 id. 356; *Matter of Mehler*, 143 Misc. 63.) The provisions of subdivision (a) of article third give to the widow of deceased for her whole life (or until remarriage) the right of occupancy of the Peekskill property and the right to have it maintained in good order and condition during that period. In the directions for the distribution of the principal to the son there is no mention made of the further maintenance of the Peekskill property. It would require specific direction by the testator that such maintenance should no longer continue to warrant a holding that the widow's tenancy terminated when the son attained age thirty-five. It is utterly inconsistent with the scheme of testator and with his intention as necessarily found in the language which he used concerning his widow to assume that he intended she should occupy the Peekskill property for nineteen years (the son would then attain age thirty-five) and then that she should completely alter her scheme of living and should seek another place to live or be burdened with payment of the charges of the Peekskill property out of the annuity of $15,000. The contention of counsel for the son that the trustee has no right whatever to administer the real estate as part of the trust (citing *Matter of Miller*, 257 N. Y. 349) may be sound enough in the sense that there is vested in the son the remainder interest in the real property but it is still the case that the widow has the right to occupy the premises while she lives or until she remarries; and it is still the case that the trustee is charged by deceased with the obligation to maintain the premises until the widow's interest terminates.

The provisions in the will for the distribution to the son of the remaining principal of the estate must be deemed subject to the requirement of retention by the trustee of a sufficient amount to produce an income adequate to maintain the Peekskill premises. Unless the parties can agree upon the amount so to be reserved the court will take proof as to the amount required. The decree to be entered will provide for the maintenance of the Peekskill property out of the income of the fund so reserved and for the distribution of the capital thereof to the son upon the death or remarriage of the widow. Any surplus income will be payable to the son.

The decree of June 18, 1931, spoke as of its date and determined as of that date what reserve should be made of securities to provide the $15,000 annuity for the widow. The decree did not by its

terms bar the further action of the court in the event conditions developed which required revision of the direction then made. The court has power at any time to determine whether the fund is sufficient and has power to add to or decrease it. (*Griffen* v. *Keese,* 187 N. Y. 454; *Matter of Vanderbilt,* 229 App. Div. 574.) *Matter of Clark* (251 N. Y. 458) is not to the contrary because there the direction was to set aside a sum presently sufficient to produce a certain income with direction to pay the net income derived *from the fund.* The will contemplated a possible fluctuation in that income. It directed the creation of the fund with the chances of increase and decrease of income thereon operating either to the benefit of or the detriment of the income beneficiary. Here there is a fixed allowance to the widow. The testator's direction is that she get $15,000, no more and no less. The fund must be maintained at a figure which will give her that. The son has received the surplus income.

The court determines on the authorities cited that it has power to increase the fund. It deems it necessary that the fund be increased because the present margin seems insufficient to assure absolute safety. Since the capital of the estate will no longer be within the control of the court it should now exercise its authority to establish the capital from which the annuity is to be paid at an amount which in any predictable contingency will assure its payment. Thereby nothing is done which the objecting son can complain of. He will receive as before any surplus income. The testator did not intend that he should have the capital in a degree which prejudiced the right of the widow to her annuity.

Unless the parties can agree upon an amount to be added to the fund out of which the annuity is paid the court will determine the matter after hearing the parties.

The decree to be entered will reserve the obligation of the trustee to further manage the funds remaining in its hands for the purposes specified above and will require an accounting therefor upon the death or remarriage of the widow of deceased. In other respects the decree will be final.

Proceed accordingly.