In the Matter of the Estate of GRACE WILKES, Deceased.

Surrogate's Court, New York County, November 6, 1939.

*Barr, Robbins & Palmer*, for the trustee, petitioner.

*Iselin, Riggs, Ferris & Mygatt [Lawrason Riggs, Jr., Frederick E. Mygatt, Jr.,* and *Perry D. Trafford, Jr.,* of counsel], for Katharine L. Wright, respondent.

*Harrison, Elliott & Byrd [Hugh N. W. Ronalds* and *Robert W. B. Elliott* of counsel], for the Society of St. Johnland and New York Protestant Episcopal City Mission Society, respondents.

*Sage, Gray, Todd & Sims [George Gray Zabriskie* of counsel], for The Cathedral Church of St. John the Divine in the City of New York, respondent.

*Alexander J. Feild*, for The Domestic and Foreign Missionary Society, etc., respondent.

*Choate, Larocque, Mitchell & Ely [Joseph Larocque* of counsel], for St. John's Guild, respondent.

*White & Case [Edmund M. Beecroft* of counsel], for the New York Eye and Ear Infirmary, respondent.

*Jackson, Fuller, Nash & Brophy*, for St. Luke's Home for Aged Women, respondent.

*George N. Whittlesey,* for the Children's Aid Society, respondent.

*Davis, Polk, Wardwell, Gardiner & Reed,* for the State Charities Aid Association, respondent.

*Charles Burlingham,* for the Church of the Ascension, respondent.

*Cadwalader, Wickersham & Taft,* for the Sisterhood of St. Mary, respondent.

*Milbank, Tweed & Hope,* for the Community Service Society, respondent.

*Butler, Wyckoff & Reid,* for the Stuyvesant Square Hospital, formerly The New York Skin and Cancer Hospital, respondent.

DELEHANTY, S. Deceased died on August 7, 1921. Article fifth of her will in part provides as follows: " I give to the Union Trust Company in the City of New York such an amount in cash or securities, to be determined by my executors and to be taken out of my individual property, as will yield an income of Five Thousand Dollars ($5,000.00) a year, free and clear of commissions and taxes, upon trust, to collect the said income and to pay the same over to Katharine L. Wright, wife of James A. Wright, during her life, and after her death, upon trust, to transfer, and I hereby give and bequeath the principal of said fund, to the following named institutions and in the amounts hereinafter specified, namely:" Then it specifies eleven religious or charitable institutions as the ultimate beneficiaries of stated sums which aggregate $105,000. To a twelfth institution deceased gave " the remainder." After thus disposing of the fund article fifth concludes with the following text:

" I authorize the said Union Trust Company to retain any securities that may be delivered to it for the purposes of the trust above mentioned, and to sell such securities and reinvest the proceeds in such securities as to it may seem best; it being my desire that the Trust Company shall, so far as practicable, keep the fund invested in such manner that it will yield annually a net income of Five Thousand Dollars ($5,000.00) over and above all commissions and taxes.

" I authorize my said Executors to transfer said fund to the Trust Company as soon after my death as practicable, and until the said trust fund is constituted I direct my Executors to pay to said Katharine L. Wright, Four Hundred Dollars ($400.00) monthly."

In various articles of the will appearing both before and after article fifth deceased made numerous general and specific legacies. Her residuary estate she gave to the Sisterhood of St. Mary — one of the respondents in the present proceeding.

On June 7, 1922, the executors of deceased (who are not parties in the present proceeding) delivered to the trustee under article fifth the sum of $110,000 in cash. On July 11, 1923, the respondent Katharine L. Wright executed an instrument which recited that the executors had submitted to her a copy of their account " wherein it appears that they have duly paid to the Union Trust Company in the City of New York * * * the sum of * * * $110,000 * * * in cash for the purpose of constituting the trust above mentioned in said Paragraph Fifth for my benefit." Accordingly Katharine L. Wright, as the instrument says, acknowledged that she had examined the account and had approved it in all respects " so far as I have any interest therein " and she, therefore, forever released the executors from " all liability, accountability and responsibility of every kind and nature to me by reason of their said executorship." Similar releases were obtained by the executors from both the residuary legatee and the beneficiary of " the remainder " of the fund set up under article fifth.

From October, 1922, to August, 1939, the trustee paid $416.66 monthly to Katharine L. Wright. This monthly sum is of course substantially at the rate of $5,000 each year. Schedule C-2 of the account shows that from June, 1923, to June, 1936, annual collections of income exceeded $5,000. The trustee kept the excess in the income account. Thereafter annual income collected was under that figure. The deficit in income was made up out of the accumulations held in income account by the trustee. The capital value of the fund is now less than $100,000 and as presently invested necessarily fails by a large margin to earn $5,000 per annum. No surplus income from prior years remains.

In this state of facts the petitioner applies for a construction of article fifth of the will and asks a determination whether the trustee is required to supply income deficiencies out of principal when the net income is under $5,000 per year. Petitioner also asks a determination whether the trustee has power to invest in other than legal investments.

Answers interposed by Katharine L. Wright, the several institutional remaindermen and the residuary legatee raise several issues. Katharine L. Wright seeks a holding that an annuity of $5,000 was created for her benefit and that to make up for deficiencies in income the trustee is empowered to invade the corpus. Since the present fund is insufficient to produce the annuity she asks in the alternative that the residuary legatee be required to pay to the trustee an amount of capital which will assure an increase in current earnings until they reach the $5,000 figure; or, as another alternative, that the trustee be directed to invest the present capital so as to obtain

therefrom an annual income of $5,000. Finally she asks that the trustee be held to be empowered to invest in non-legals.

The residuary legatee in opposition to the foregoing contentions urges that by reason of the release executed by Katharine L. Wright in 1923 she is estopped to make any claim at this time against the residuary legatee; that the fifth article of the will creates a trust and not an annuity; and that on the death of Katharine L. Wright all income accrued on the trust fund becomes payable to the residuary legatee.

The petition and these answers sufficiently define the questions to be determined. The pleadings of the remaindermen-respondents cover the same ground. Some of them point out additionally that when the executors delivered to the trustee the sum of $110,000 in satisfaction of the requirements of article fifth the remaindermen (aside from the beneficiary of " the remainder ") were not consulted. One respondent (Cathedral of St. John the Divine) alleged that it was entitled to the full $10,000 legacy payable to it under the will upon the death of Katharine L. Wright and sought present assurance of certainty of that future payment. This contention was not pressed.

The parties are unanimously of the view and the court now holds that the investment powers of the accountant are not limited to legal investments. The text authorizes the trustee " to retan any securities * * * and to sell such securities and reinvest *the proceeds* in such securities as to it may seem best." If the trustee had received securities from the executors, sold them for cash and then sought new investments it is plain from the will that it could have resorted to non-legals. The circumstance that it originally received cash and not securities is of no importance. In its investments the trustee is limited solely by the rules of prudence, diligence and good faith. The court, however, will not tell the trustee in what securities it should invest for to do so would be to substitute its discretion for that of the trustee.

The main question now here is whether the dominant purpose of deceased was to give Katharine L. Wright $5,000 a year or whether her dominant purpose was to create a trust fund the capital value of which was determinable by her executors. If the intention of deceased was that a fixed annual sum should be paid to the income beneficiary " at all events, (then) that intention will not be permitted to be overruled, merely by a direction in the will that the money is to be raised in a particular way, or out of a particular fund." (*Pierrepont* v. *Edwards*, 25 N. Y. 128, 131.) When it is shown that the primary intention of deceased is to make a gift of a fixed annual sum " at all events " then a residuary legacy can never be definitively fixed until the annuitant is wholly satisfied

unless, of course, deceased provides to the contrary such as by giving directions for satisfaction of the annual charge by means of invasion of a fixed corpus set aside to pay the annuity. (*Griffen* v. *Keese*, 187 N. Y. 454, 465; *Matter of Kohler*, 231 id. 353, 376; *Matter of Gabler*, 140 Misc. 581; modfd. and affd., 235 App. Div. 807; affd., 261 N. Y. 517; *Matter of Vanderbilt*, 229 App. Div. 574; *Matter of Bird*, 157 Misc. 748, 752; affd., 250 App. Div. 848; *Matter of Bamberger*, 163 Misc. 549.) Where an annuity is bequeathed to be payable from a fund defined by a formula, and the formula gives different results at different times, the courts as the cited authorities show do not hesitate to entertain applications from time to time to test the sufficiency of the capital fund by considering the contemporary operation of the formula.

Wholly different are the results where deceased has for his " ruling purpose " (*Matter of Vanderbilt, supra*) not the payment of a fixed annual income but the payment of net income from a capital fund to be ascertained by a formula. In that situation the trust capital is determined once for all though income will be variable. Such a scheme neither admits of invasion of corpus nor of the reconstitution of corpus to supply income deficiencies. (*Matter of Clark*, 251 N. Y. 458, 465; *Matter of Rounds*, 252 App. Div. 10; affd., 277 N. Y. 622; *Spencer* v. *Spencer*, 38 App. Div. 403; *Matter of Velle*, 119 Misc. 15; *New York Life Ins. & Trust Co.* v. *Sands*, 24 id. 102.) In such a situation the deceased doubtless " intended that the * * * [beneficiary] should receive approximately the income that * * * [she] indicated and * * * [she] directed how that intention should be carried out." (*Matter of Clark, supra*, at pp. 464, 465.) Nevertheless the income beneficiary has not been given any assurance of a fixed annual income. Actual yield of a fixed fund being the subject of the gift " the risk of lesser income in lean years would then balance the possible gain from greater income in fat years, and at the death of the life beneficiary the remaindermen would receive a fund measured in accordance with the directions of the testator, which would not fluctuate with the fluctuations of income. (See *Russell* v. *Loring*, 85 Mass. 121.) " (*Matter of Clark, supra*, at p. 465.)

The intention of deceased is stated clearly. She gave to her trustee a fund to be determined by her executors acting under the guidance of a stated formula. She directed her trustee to collect the income of this fund and to pay the whole of it to Katharine L. Wright during her life. She expressed a desire that her trustee so far as practicable should so invest the fund that it would produce a net annual income of $5,000. The dominant purpose of deceased was to create a trust. The executors followed her directions, applied her formula in a manner consented to by the income bene-

ficiary, the residuary legatee and by the beneficiary of the undefined " remainder " of the fund.

The trust fund thus came into existence. Its corpus may not be reconstituted nor may it be invaded. The income beneficiary is entitled to any income in excess of $5,000 in fat years and to no more than the current yield in lean years. She will not be heard now to question the action of the executors in 1922 when they decided that $110,000 in cash was the correct result of an application of deceased's formula. If Katharine L. Wright had reasons in 1922 to complain of the insufficiency of the fund she should have advanced them then — not now. She had opportunity to do so but she expressed herself as satisfied. Since this is a trust fund which was to be constituted once for all any party given the opportunity in 1922 or 1923 to question its sufficiency is estopped *now* to make a complaint which might have been asserted *then*. Manifestly the estoppel does not affect any of the remaindermen-respondents who were never consulted on the question of the fund's sufficiency. If, however, such a remainderman is entitled to have relief (a matter on which the court expresses no opinion) it can only be had in a proceeding in which the executors are present. As was stated hereinabove they are not parties here.

The contention of the residuary legatee that it is entitled to the accrued income of the trust at the time of Katharine L. Wright's death is overruled. Mrs. Wright is entitled to all income earned during her lifetime. If any such income is not paid during that period it becomes payable to her estate.

One respondent suggests that an informal committee be formed by the remaindermen to consult with the trustee as to ways and means of increasing the annual income and the capital value of the fund by way of a judicious investment policy. Like the suggestion that the court direct the trustee as to the manner in which it should invest the capital this suggestion is viewed by the court as calling for no action on its part.

In summary: The court holds that article fifth of this will creates a trust all income from which is payable to Katharine L. Wright; that the trustee may invest in non-legals; that the corpus of the fund may not be invaded; that the respondent Katharine L. Wright is estopped to question now the sufficiency of the fund as originally constituted; that the trustee and not the court must determine investment policy; that, so far as this record shows, remaindermen-legatees are not estopped to question the propriety of the 1922 action of the executors but can litigate questions on that subject only in a proceeding in which all necessary parties are present.

Submit, on notice, decree settling the account and construing the will accordingly.