*526 OPINION OF THE COURT
Marie M. Lambert, S.
This is a proceeding to construe a will to determine who is entitled to royalties not bequeathed by paragraph 7 (18) and more importantly, to determine who shall hold legal title to and control the intellectual property rights in the decedent’s works and the works of Dashiell Hammett of which she was an owner.
Petitioners are the three persons designated as "Literary Property Fiduciaries” in article sixteenth of the will. Although their duties, compensation, and specific powers are spelled out, nowhere are they explicitly given a trust to administer. Petitioners aver that the terms of the will can be construed as creating a preresiduary trust of the decedent’s copyright interests in her own literary works with petitioners as trustees under article seventh (18) and that petitioners can be appointed as trustees of the literary works of Dashiell Hammett which are bequeathed to a trust under article tenth of the will. The executors have filed an answer in which they agree that a construction is necessary but take no position with respect thereto.
The testatrix was a complex person who executed a complex will. While her literary works can be characterized as creative genius, her will cannot. In order to sort out the amorphous and conflicting provisions contained in this testamentary instrument a brief synopsis of the relevant articles is in order.
In article sixth the testatrix bequeathed to the University of Texas all of the original writings, manuscripts and related literary property owned by her (with certain exceptions), as expressly distinguished from copyright interests or interests under royalty agreements. Thus the disposition of the physical embodiment of the Hellman-Hammett oeuvre, such as their manuscripts, is not at issue.
In article seventh she bequeathed her "tangible personal property except cash” to named individuals in 17 separate enumerated paragraphs. The final paragraph "(18)”, bequeaths the "balance of my tangibles” in two sections, "(a)” and "(b)”. Section (a) gives to Peter Feibleman 10 items of tangible property and bequeaths him "fifty (50%) percent of all royalties due or to become due for my literary work only, and upon his death, all royalties shall be paid to the Lillian Heilman Fund.” The Lillian Heilman Fund is one of the two trusts created out of the residuary estate by article eleventh. *527 Section (b) gives "the remainder of such balance” in equal shares to several named legatees. This article is at issue for several reasons. First, it is unclear what is meant by "all royalties”, specifically whether the 50% payable to Mr. Feibleman is on gross or net royalty basis. Annexed to the petition as an exhibit are letters from the decedent to Feibleman which petitioners believe indicate that she intended the royalty payment to mean gross royalties less only the commission to be paid to her agent.
The second issue with regard to this paragraph concerns the 50% of the royalties not bequeathed to Feibleman. Since there is no explicit bequest of the remaining 50%, the court is asked to determine whether it belongs to the Heilman Fund under paragraph 7 (18) (a), to the individuals named in paragraph 7 (18) (b) or falls into the residuary under article eleventh. It is important to note that although the decedent bequeaths royalties under article seventh (18), she does not bequeath right, title and interest to her works.
In article tenth of the will decedent bequeaths her Hammett intellectual property, giving "all my right, title and interest in the works of Dashiell Hammett or works based upon his writings * * * to the fiduciaries hereinafter named in trust to divide the net income thereof (including, but not limited to, all royalties, payments, and other receipts) as well as the net proceeds of any sale or exchange of such works” into shares to be paid to Dashiell Hammett’s two daughters or the issue of one of them. The fiduciaries, whom the will fails to name, are given discretion to terminate the trust upon the death of both daughters and to pay over the principal to the issue of one daughter, per stirpes, but the trust may continue so long as any of the indicated beneficiaries who are alive at testatrix’s death is still living.
All "royalties, income, payments and other” receipts from Dashiell Hammett’s works are to be treated as income, without apportionment. The final paragraph directs that "notwithstanding anything hereinabove contained to the contrary * * * all' determinations concerning the use, disposition, retention and control of the works of Dashiell Hammett, both published and unpublished, including all copyrights and royalty agreements pertaining thereto, shall be made by the fiduciaries of my literary property.”
In article eleventh, the testatrix bequeathed her "residuary estate” in two equal shares to two different sets of trust *528 ees, creating two separate charitable funds, named the Lillian Heilman Fund and the Dashiell Hammett Fund, each with a different major public policy focus for which income and principal of the respective fund may be used in the fiduciaries’ discretion.
In articles thirteenth through fifteenth the will nominates various persons as trustees of the Hammett and Hellman residuary trusts and of another trust not relevant here. There is some overlapping among the persons named as trustees of each trust but more differences.
Article sixteenth appoints the petitioners as "fiduciaries of my literary property” and directs them to "make all determinations concerning the use, disposition, retention and control of all writings * * * and other literary property, whether created by me or others, owned by me at the time of my death * * * including all copyrights and royalty agreements pertaining thereto, and shall continue in office as long as my estate or any trust created by this Will has any copyright interest therein.”
In addition to these broad general powers, the literary property fiduciaries are included in the grant of general powers to fiduciaries in article eighteenth and are also given power to contract for publication of previously published literary property, to contract for the sale, lease or other disposition of subsidiary rights (including film and television), to review copyrights, to sue for infringement of copyrights and to have exclusive authority as to new contracts for such literary materials. These enumerated powers include, in paragraph (i), the express grant of "all powers and authority as to renewal or extension of copyright, and any other powers relating to copyright, which I would have if I were alive”; in (l) the power to collect all payments and make all disbursements in connection with all contracts and undertakings with respect to literary property; and in (m) the power to authorize payments with respect to "all contracts and undertakings with respect to literary property to be made directly to the beneficiary entitled to receive the same.”
In recognition of the potential for disagreement among the various sets of fiduciaries, article sixteenth provides that in such event the decision of the literary property fiduciaries shall control concerning such property.
For the performance of their duties the will provides that the literary property fiduciaries be compensated as follows: *529 10% of the gross proceeds from use, sale, lease, license, sale, etc., of "the literary work” to be divided among them annually plus 10% of the balance to each of them per capita, per year.
The central issue in this proceeding is whether the testatrix bequeathed right, title and interest to her literary works to the literary property fiduciaries to be administered in accordance with paragraph 7 (18) or whether her literary property rights fall into her residuary estate to be divided into two funds and to be administered by two separate sets of trustees. The only other possible alternative, that the property rights were bequeathed to named individuals in paragraph 18 (b) who take the remainder of the tangibles, makes no sense in the light of the decedent’s apparent plan and plain meaning. As previously noted, petitioner’s cure for the failure of the testatrix to bequeath her property interest is for the court to find that paragraph 7 (18) creates an express preresiduary trust.
A review of the decedent’s will indicates a clear intent that she did not intend to have legal title to her literary property fall into her residuary estate and to be subject to the judgments of two different sets of trustees. It is clear that the sole purpose for the creation of the literary property fiduciaries was that the testatrix’s literary work would be handled in a unified, expert and appropriate manner. While the court agrees that an implied trust could readily be found from the terms of the instrument, it believes that bestowing the mantle of the traditional trustee upon the literary property fiduciaries does not adequately reflect the special burdens imposed by a literary property res. The management of literary property is more than the economic stewardship of a limited and wasting monopoly conferred upon an author under the copyright laws. How such literary property is exploited affects not only economic aspects of the author’s works, but the esteem in which the author is held. As such, management of a literary work requires a delicate balance between economic enhancement and cultural nurture. Traditional trustees, emphasizing prosperity rather than posterity may be forced to concern themselves solely with keeping the books rather than keeping the flame. (See, Colton, Gifts, Wills and Estates — Establishing an Interest in an Author’s Writing and its Copyright, NYLJ, Apr. 25, 1986, at 5, col 1.)
In the instant case, the testatrix recognized that she sought to promote diverse interests by selecting different individuals to serve as trustees depending upon the purpose of the trust. *530 It is further clear that the intent, in appointing literary property fiduciaries, was to give them the freedom to make literary decisions based upon multiple considerations, not just economic ones.
Accordingly, the court will exercise its authority to issue limited letters under SCPA 702 (8) and finds that the literary property fiduciaries are trustees for the limited purpose of taking title to the Heilman literary property and managing it under the powers conferred by the will and in accordance with the provisions of article seventh (18). In limiting the letters in such a fashion, the court intends to emphasize the inherently different nature of a literary property fiduciary.
With regard to the other issues raised by the paragraph 7 (18) trust, the court determines that the decedent intended that Feibleman receive 50% of the gross royalties less only the agent’s commissions. The plain meaning of decedent’s language, her lifetime usage and the evidence in this will which indicates that she provided for net gifts when intended all compel this conclusion.
As to the issue of surplus royalties remaining after payments to Feibleman and all expenses, the court agrees that any such surplus is payable to the trustees of the Lillian Heilman Fund. Without regard to whether EPTL 9-2.3 is applicable (see, Matter of Vanderbilt, 229 App Div 574 [1st Dept]), it would be unreasonable to assume that decedent intended to divert this intermediate and uncertain right to royalties into her residuary estate for division between the Heilman and Hammett trusts when all the rest of her provisions for the receipts from the Heilman and Hammett works are separately earmarked and her principal royalties are routed to Peter and then to the Heilman Fund. Under this construction of the dispositions of the Heilman intellectual property there is no need for determination of the issue raised by petitioners as to whether any Heilman royalties need be allocated to principal as a reserve. The limited trustees for literary property only have the duty to manage the literary property and pay over the royalties as indicated; insofar as any payments are made to the trustees of the Lillian Heilman Fund the court notes that they have complete discretion regarding the distribution of income and principal. For the same reason there is no cause to rule on the allocation of expenses.
The issues raised by the treatment in this will of the *531 decedent’s intellectual property in the Hammett works can be resolved in a more traditional fashion. Although article tenth bequeaths the decedent’s interest in the Hammett works to the trustees of that trust while article sixteenth confers control to the literary property fiduciaries, the will never designates any persons to serve as trustees under article tenth. Since the intellectual property is the sole asset of that trust and the will appears to direct all net receipts from such property (including the net proceeds of any sale) to be distributed to the income beneficiaries, the scope of the trustees’ duty under article tenth is very easily assimilated into the duties of managing the literary property. Although the trustees under article tenth are given discretion to terminate that trust, the provisions centralizing control of the literary property under article sixteenth and directing that all receipts be distributed as income renders this discretion academic. In any event the persons named in article sixteenth have consented to serve as trustees under article tenth.
Accordingly, letters of trusteeship of the article tenth trust will be issued to the persons named as fiduciaries in article sixteenth of the will, to serve as trustees of the article tenth trust with all of the powers conferred on them under both said articles. The trustees’ compensation shall be fixed by the provisions of article sixteenth.
The executors have not opposed petitioners’ request that they be ordered to transfer forthwith all of decedent’s literary property rights to persons here found to be their owners and to register such transfers accordingly. The decree herein shall so provide.