In the Matter of the Estate of GUSTAVUS SIDENBERG, Deceased.

Surrogate's Court, New York County, May 18, 1933.

*Harry N. Wessel*, for the contestants Anna Sidenberg, Sarah Straus and others.

*M. S. & I. S. Isaacs* [*Lewis M. Isaacs* of counsel], for the contestants Rosa Rich, etc.

*Brussel & Beebe,* for the petitioners.

*Albert Erdman,* for Theresa Sidenberg.

*Lachman & Goldsmith,* for the executors of Henry Sidenberg, a deceased trustee.

FOLEY, S. In this accounting numerous questions have been raised by the parties, involving the construction of certain provisions of the will and the computation and allowance of commissions to the trustees. The present accounting covers the period from August 19, 1922, to March 16, 1932. There have been two prior accountings by the executors and trustees, each of which was terminated by formal decree. The corpus of the trust consists of securities, cash and two parcels of real property in the city of New York. The principal asset is the realty known as the Hotel Theresa Building, located on Seventh avenue from One Hundred and Twenty-fourth to One Hundred and Twenty-fifth streets. The approximate book value of the capital assets remaining in the hands of the trustees, as of the last date of the pending account, is $584,000.

The will creates certain trusts with directions to pay fixed amounts annually to designated persons. Some of these trusts have fallen in by reason of the deaths of the life tenants, and the principal has been distributed under the prior decrees. The fund dependent upon the life of Josie Lindheim, who died during the period of the present account, remains for distribution here. A separate trust was created for the widow, Theresa Sidenberg, of real estate occupied by the decedent in his lifetime as his residence. Pursuant to the terms of the will the property has been sold, and the proceeds — approximately $66,000 — are held in a so-called " Special Fund " in trust for the life of the widow. The will further directs the setting aside of sufficient mortgages or other investments or portions of the property out of which an annual income of $15,000 is to be paid to the widow during her life. Similar provisions are made for the separate payments of income of $5,000 per annum each to the testator's sister-in-law, Anna Sidenberg, and to his sister, Sarah Straus. Under the terms of the will, the residue is to be held in trust in three equal parts for the benefit respectively of another sister and two brothers. The various questions raised are determined as follows:

(1) In the practical administration of the trust there has been no physical division of assets as between the four major trusts created by the will which are respectively the trust for the widow, the trusts for the sister and sister-in-law, and the residuary trust. Nor has there been any subdivision of the residuary trust into the three parts contemplated by the will. The corpus of all these trusts has

been practically held *in solido*. It is contended by the widow and certain other objectants that this method of administering the trusts by the trustees was in violation of the terms of the will and that there should have been an actual severance of the assets between the respective trust funds. In substance, their contention would have required the sale of the real property and the investment of the proceeds in securities for the different trusts. These contentions must be overruled upon two grounds: *First*, the will authorized the retention of the realty, and *second*, the objectants, by their acquiescence for a period of seventeen years in the system of management by the trustees, are estopped to question the retention of the trust assets *in solido*.

A constructive or theoretical separation of the trusts was carried out by the trustees. (*Matter of Johnson*, 170 N. Y. 139.) Their method was to capitalize the fixed income payments upon the basis of five per cent per annum. In accordance with this method, they treated the trust fund for the widow, based upon her $15,000 annual income, at a total value of $300,000. The capital value of the annual income payment of $5,000 each to the sister-in-law and the sister of the testator was fixed at the sum of $100,000. Although this process adopted by the trustees was one of bookkeeping only, the will appears to have authorized it, particularly the directions of the testator in paragraphs fifth and sixth to set aside " portions of my property " in the setting up of the trusts. In paragraph tenth wide discretion was given to the trustees to retain the property left by the testator. They were also authorized to hold any of the " property under various of the trusts hereinbefore prescribed, wherever necessary, and to change such trusts from one portion of my estate to another, whenever they deem the same advisable."

It is not difficult to understand the practical reasons which led the present objectants to acquiesce in the method pursued by the trustees for a long period of years. During the greater part of the term of administration, the real estate, and especially the Hotel Theresa, yielded an income amply sufficient not only to secure the payment of the fixed annual provisions, but also to provide a very large income for the life tenants of the residuary trust. Assurance of the continuance of the fixed annual sums was thereby furnished. The change of disposition only came to the objectants within the past few years as an outcome of the business and real estate depression. The profitable income from the hotel management not only ceased, but a large deficit in operation was suffered in the past few years.

In addition I have held that the objectants are estopped to question the disputed acts of the trustees. The widow, one of the object-

ants, was herself an executor and trustee and participated in the established course of administration. The other objectants were made parties in the two former accountings and in proceedings in the Supreme Court to authorize the leasing for a long period of years of parts of the real estate. In none of these proceedings did the widow or other objectants urge the sale of the real property or demand the actual and physical division of the trust funds. By their conduct and their acquiescence in these determinations they are precluded in this accounting from questioning the acts of the trustees of which they complain. (*Cowenhoven* v. *Ball*, 118 N. Y. 231, 234; Surr. Ct. Act, §§ 80, 274; *Joseph* v. *Herzig*, 198 N. Y. 456; *Matter of Hoyt*, 160 id. 607; *Bowditch* v. *Ayrault*, 138 id. 222; *Matter of Schley*, 202 App. Div. 169; affd., 234 N. Y. 616; *Matter of Roche*, 259 id. 458; *Matter of Rosenthal*, 141 Misc. 404.) All the objections on this point are overruled.

(2) The widow now contends that the payment of the sum of $15,000 per annum under the fifth paragraph of the will should have been made without deduction of any commissions claimed to be due the executors and trustees. Her contention is overruled. The decrees on the two prior accountings are conclusive upon this issue. These decrees settled the accounts of the executors and trustees, of which the widow was one. She was a petitioner in these proceedings. An examination of the two accounts settled by the decrees shows that commissions were regularly deducted from her gross annual income of $15,000. This method of administration covered a period of seven years from 1915 to 1922, the last date of the second account. If the widow had desired, it was within her power to raise the question in the original accounting. Having consented to the deduction of the commissions and having failed to dispute their allowance or to assert her right to the full, undiminished annual amount, she is precluded from now raising the question that the commissions are not deductible from the income directed to be paid to her. (*Giles D. M. Co.* v. *Klauder-Weldon D. M. Co.*, 233 N. Y. 470, at p. 477; Surr. Ct. Act, §§ 80, 274, and cases cited *supra*.)

(3) The widow makes further contention that the gift to her of a fixed annual income of $15,000 was in the nature of an annuity, and that she is entitled to payment of that sum in whole or in part out of the principal in the event of a deficiency of income actually earned upon the fund set aside under the fifth paragraph of the will. That contention is sustained. In this connection it is unnecessary to distinguish the refinements or technical difference between an annuity or an income directed to be paid from a trust or the payment of a fixed annual amount in the nature of a demonstrative legacy.

(*Matter of Kohler*, 96 Misc. 433.) The question is inherently one of the ascertainment of the intent of the testator.

I find strong evidence of a purpose by the testator to provide a fixed annual amount for the support of his widow. The other executors and trustees have treated the provisions of the will for the widow during the period of administration as in the nature of an annuity. The other executors and trustees have limited her to a maximum payment of $15,000 per year, less commissions, during approximately seventeen years of the trust period. The widow herself has acquiesced in the payment of that maximum. If the direction had been as in *Matter of Clark* (251 N. Y. 458), to set aside a fund sufficient to produce the fixed amount, with direction to pay the *income* of the fund to her, she would have been entitled to a very large increase in her annual allowance, since in that event the entire income from the investments would have been prorated. Her income, in that event, instead of averaging $15,000 per year, might have reached as high as $100,000 per year.

The pertinent provision of the will directed the executors " to lay aside sufficient mortgages, securities, cash or portions of my property out of which an annual income of $15,000 may be realized, to invest and reinvest the same, to collect such income, and to pay over such income semi-annually to my wife, Theresa Sidenberg during her life, or until she remarries." The words " *such income* " plainly applied not to the income actually earned on the fund, but to a fixed annual allowance of the amount specified, $15,000. The language is much similar to that employed in the wills involved in *Matter of Kidd* (O'BRIEN, S., 142 Misc. 512; affd., 225 App. Div. 663) or in *Matter of Oakley* (SLATER, S., 142 Misc. 1). In those cases an expression of intent to permit the payment out of principal to make good the deficiency in the earning of the fixed amount was found. (See, also, *Pierrepont* v. *Edwards*, 25 N. Y. 128.) *Spencer* v. *Spencer* (38 App. Div. 403), relied upon by those opposed to the contention of the widow, is not applicable here. There the will directed the setting aside of a fund sufficient to produce a net income of $25,000 per year with directions to pay the widow the income upon the fund *up to* that amount annually. The distinction between the payment of a fixed amount and the income earned *up to* a fixed amount upon a fund must be evident. While the widow in that case was held to be entitled to surplus income in any one year to make up deficiencies in prior years, no invasion of principal was properly held to be authorized under the will. The accrued amount of the deficiency will be directed to be paid to the widow out of principal.

(4) The objection of the widow to the method of computing commissions on her income is sustained in part. I have held that her

income of $15,000 was subject to commissions by reason of her own acquiescence over a long period of years and by reason of the conclusiveness of the prior decrees. In a subsequent portion of this opinion I have covered that part of her objections which relates to the allowance of commissions on rents. There remains here the determination of the method of allocation of income commissions withheld by the trustees. No question of acquiescence or estoppel is involved upon this issue, for the widow made timely objection to the actions of the trustees during the period of the present accounting. It appears from the account that from the year 1923 to 1931 the trustees charged against the income of the widow excessive commissions and that they adopted an erroneous method of allocation which discriminated against her. The most flagrant example of this discrimination is found in the year 1931 where there was charged against her as commissions the sum of $6,155.31 as a deduction against her fixed income of $15,000. As against Anna Sidenberg and Sarah Straus, other life tenants, there was deducted as commissions in that year the sum of $525 from their fixed income of $5,000. The deduction for commissions from the widow's share was approximately forty per cent. The deduction from the other two life tenants was approximately ten and one-half per cent. In effect, the widow was treated as if she were a residuary legatee and the greater part of the burden of commissions was cast upon her. Necessarily the deductions for commissions upon gross income and rents under the statute greatly diminished the net income for that year. Commissions should have been equitably prorated as between each of the life tenants participating in the net income of the trust. The objections of the widow to that extent are sustained. New computations should be submitted in accordance with this determination and the executors and trustees surcharged with the unlawful charges made against the widow.

(5) The will clearly directed the segregation of the proceeds of the sale of the former residence of the testator as a separate trust fund with income directed to be paid to the widow. The principal is approximately $70,000. Since the fund, therefore, does not equal the sum of $100,000 fixed under section 285 of the Surrogate's Court Act as a basis for triple commissions, one commission only, to be divided between the trustees, shall be allowed on the income of this fund payable to the widow.

(6) Anna Sidenberg and Sarah Straus, as life tenants, contend that a single commission divided among the three trustees under section 285 of the Surrogate's Court Act should have been deducted from the annual income of $5,000 directed to be paid by the will to each of them. The executors and trustees deducted three com-

missions upon the theory that the capital value of each of these funds equaled or exceeded $100,000 — the statutory amount which authorized full commissions for each trustee.

By reason of the acquiescence, estoppel and conclusiveness of the prior determinations by the decrees on the two former accountings, I hold that they are precluded from asserting their present contentions. Triple commissions involving the allowance to each executor and trustee of full commissions on the theory that the fund equaled or exceeded $100,000 were allowed by these prior decrees, and such commissions were currently deducted from the income paid to them during a period of seven years from 1915 to 1922. No objection was made by them to this procedure either currently or upon the settlement of the two prior accounts. Under the authorities cited by me above, the former decrees are conclusive upon them and they cannot now contend for a different method of administration. Independent of this determination I hold that the trustees properly capitalized the fund necessary to earn the $5,000 annual sum directed to be paid to them upon a five per cent basis which resulted in a capital value of $100,000.

I have held that authority existed in the will for the establishment of a constructive or theoretical fund in this amount. (*Matter of Johnson*, 170 N. Y. 139.) In addition it appears that the interest rate employed by the trustees and the final fixation of the capital sum was fair and reasonable and commensurate with the average income earned on trust funds. If a lesser rate, say four and one-half or four per cent was employed, the capital of the fund would be proportionately increased above $100,000. Experience has shown that trust funds, conservatively invested, yield not more than from four and one-half to five per cent even in the most favorable times, and the courts in fixing an average rate of return or in capitalizing a fund have considered these rates and have employed an interest rate based on not more than five per cent. The objections upon this point are, therefore, overruled and triple commissions will be allowed.

(7) A question has arisen as to whether commissions may be allowed under the amendment to section 285 of the Surrogate's Court Act on the rentals from stores located in the Hotel Theresa building. On a prior accounting the Appellate Division, First Department, in *Matter of Sidenberg* (204 App. Div. 255), held that the receipts from the hotel were to be treated as a single operation and commissions were computed and allowed only upon the net income of the entire building including the receipts of rents from the stores and rooms and suites occupied upon leases located in it (following *Beard* v. *Beard*, 140 N. Y. 260, 265). Unquestionably

that rule would have been followed in the present accounting had it not been for the statutory amendment with respect to commissions on rents made to section 285 by the Legislature of 1923 (in effect September 1, 1923). That amendment reads as follows: " Where a trustee or executor is, by the terms of the instrument, required to collect the rents and manage real property, he shall be allowed and may retain, five per centum of the rents collected therefrom, in addition to the commissions herein provided." In construing the amendment, the Court of Appeals in *Matter of Brennan* (251 N. Y. 39) appears to have given it the broadest scope and extended the right to commissions where the rents were derived from a net lease.

In the present proceeding the rentals were derived from eleven stores situated in the Hotel Theresa building. None of these has any entry to the interior of the hotel building. Access is afforded through the street door of each store. Each of the stores is rented under a separate lease made by the trustees as landlord with the particular tenant. The rentals are paid to the trustees and not to the hotel. It appears to be conceded that the trustees have treated the operation of the hotel as independent from the rental of the stores and have treated the stores as real estate separate and apart from the business of the hotel. Section 285 of the Surrogate's Court Act has granted commissions on gross rents as an additional allowance to executors and trustees where the representative is required to " manage real property." In the present estate it appears that responsibility for the management of real estate was placed upon the trustees separate and apart from the management of the hotel business. The acts of collection and management constitute the basis for the allowance of the additional statutory commissions. I am constrained to hold, therefore, that the new form of section 285 of the Surrogate's Court Act has changed, partially, the effect of the decision of the Appellate Division in *Matter of Sidenberg* (*supra*) and furnishes the basis for compensation to the trustees to the extent of five per cent of the gross rents collected from the stores. As to ordinary and basic commissions, I hold that the method laid down in the decision in *Matter of Sidenberg* (*supra*) is controlling and the trustees are entitled to commissions only upon the net income of the entire management and operation of the Hotel Theresa. That decision established the law of this estate with respect to ordinary commissions. The amendment to section 285 of the Surrogate's Court Act applied only to *extraordinary* commissions or rents. In computing the net income of the hotel building for the purpose of fixing the *ordinary* commissions, there must be included the rentals derived from the stores, the rental derived from the suites of rooms and the operating profit, if any,

on the hotel itself. The determination of the Appellate Division, and the method of computation of receipts and expenditures involved in it, must be complied with on this accounting.

The commissions in this estate may appear excessive, particularly in view of the great reduction of net income on the entire estate, and the actual deficit in recent years. In part, this condition has been caused by the high carrying charges on the properties for taxes and interest on the mortgage and in part by the loss in the operation of the hotel. The testator himself was responsible for the appointment of three trustees, thereby making the total basic commissions six per cent. It was within his power to select a smaller number and thereby reduce the expense of administration of the estate. By the additional five per cent commissions on rents under the legislative direction, total commissions on the greater part of the income were increased to eleven per cent. The law, however, devolves no discretion upon the surrogate to relieve the beneficiaries in such a situation.

(8) Commissions of the trustees were properly deducted upon the income paid to the remaindermen of one-third of the residuary trust which has vested by the death of the life tenant. The phase of the decision in *Matter of Miller* (257 N. Y. 349), which held that trustees were not entitled to commissions on income on that part of a residuary trust consisting of real estate which had vested, has no application to the situation here. There is no clear-cut fractional division of the present real estate which vested in the remaindermen. Preliminary funds to produce income must be maintained intact. In one of such funds, that for Anna Sidenberg, the remaindermen are of a class different from that of the residuary legatees. Complications arising from the terms of the will, the necessity for paying the fixed annual amounts, the setting aside of constructive or theoretical funds and the absence of a clear-cut physical division of the properties, require the trustees to continue to exercise their powers and perform their duties until the completion of their trust. (*Matter of Thomas*, 254 N. Y. 292; *Matter of Miller, supra,* at p. 355.) The receipt and paying over of income to the remaindermen are, therefore, within the duties of the trustees and they are entitled to the allowance of commissions for such duties in this court.

(9) If there be further dispute with respect to the exact computation of commissions, determination will be made on the settlement of the decree herein. In order to facilitate the fixation of commissions, the parties are directed to serve and file computations in accordance with this decision.

Submit decree on notice construing the will and settling the account accordingly.