### In the Matter of the Estate of FRANK W. SAVIN, Deceased.

Surrogate's Court, Westchester County, July 3, 1939.

*White & Case [Hugh L. Thomson* of counsel], for The New York Trust Company, as trustee.

*Walter G. Seely,* for the annuitant.

*Peck & Schmidt,* for Anna M. Savin, residuary legatee.

*George W. Israel,* for Josephine Sargent, contingent remainderman.

*Edward E. Hoenig,* for William M. Sullivan, as executor, etc.

*Douglas J. Miller,* special guardian.

MILLARD, S. By article fifth of his will, this decedent directed his executors and trustees " To set aside so much of the principal of my estate as will produce an annual net income of Two thousand four hundred ($2,400.00) Dollars and to pay to my adopted daughter, *Muriel Elizabeth Savin,* said net income of Two thousand four hundred ($2,400.00) Dollars annually at the rate of Two hundred ($200.00) Dollars monthly, payable quarterly. Upon the death of my adopted daughter, *Muriel Elizabeth Savin,* I give, devise and bequeath to *Anna Mary Savin,* my wife, and to her heirs and assigns forever, the principal necessary for the creation of the foregoing trust." The balance of the residuary estate remaining after setting up this trust is left outright to his wife.

When the will was offered for probate, a contest ensued which was ultimately settled by agreement dated March 20, 1930, which provided, among other things, that the sum of $50,000 be set aside for the creation of the above-mentioned trust. The life beneficiary, Muriel Elizabeth Savin (now Steben) was neither a party to the contest nor this agreement. Thereafter, by agreement dated April 6, 1931, between Anna M. Savin, the widow and the life beneficiary of the trust, Anna M. Savin released her reversionary interest in the principal of the trust fund held for the life of Muriel, to the extent that the life beneficiary was given the power to dispose of said fund by will or, failing such instrument, the fund would become distributable to her issue. The decree of May 24, 1932, settling the account of the executors herein, provided for the retention of an additional of $10,000, making in all $60,000, for the creation of the trust provided for in article fifth of decedent's will. On the same day a further agreement was entered into whereby the widow, as well as all parties in interest, released their respective reversionary interests in the additional $10,000 under the same terms and conditions as was provided for with respect to the sum of $50,000. Thus the net result of the various agreements above referred to was to set up a trust fund in the principal sum of $60,000 for the benefit of Muriel Savin Steben, over which fund she was to have the power of disposal by last will and testament or, failing such instrument, said fund would descend to her issue should any survive her or, failing in both respects, the fund to

revert and be distributed in accordance with the terms of the will as modified by agreement between the widow and the persons having a possible reversionary interest therein.

In this accounting proceeding the trustee of said fund has requested the court to construe article fifth of the will with respect to the right of the trustee to invade the principal of the trust in order to pay the sum of $2,400 annually to the life beneficiary as provided in the will. The trustee alleges that the principal sum of $60,000 is now inadequate to produce the required income. It, therefore, becomes necessary to determine whether the life beneficiary of the trust is entitled to an annual income of $2,400 in any event or to whatever income is earned by the fund reserved. Further contention is made on behalf of Muriel Savin Steben to the effect that if the trust fund reserved is found to be inadequate, the residuary legatee must be directed to repay over to the trustee sufficient capital in order that the stipulated annual income may be realized.

I am not in accord with the latter contention. While there seems to be some authority for increasing or decreasing a fund reserved for the purpose of creating an annuity in a proper case (*Matter of Bamberger*, 163 Misc. 549; *Griffen* v. *Keese*, 187 N. Y. 454) I am of the opinion that these cases are not applicable to the situation presented in the case at bar.

In determining whether a gift is in fact an annuity or merely an interest in a trust fund, the intention of the testator is of paramount importance. In *Matter of Smathers* (133 Misc. 812, 819) the late Surrogate SLATER, after an exhaustive review of the authorities dealing with annuities, stated: " We are led to the inevitable conclusion that the distinction between an annuity and the payment of income from a trust fund may be determined herein from the testator's intention. The intention of the testator, when ascertained, is paramount in construing wills. There is no established rule of construction that does not bow to the intention of the testator." Applying some of the rules found in these authorities to the case at bar, it may be noted that this trust is the only provision made by the testator for his adopted daughter Muriel. His estate was a substantial one, and $2,400 a year modest in comparison. Furthermore, testator directed his executors and trustees " to set aside so much of the principal of my estate as *will* produce an annual net income " in the stipulated sum and directed *fixed* monthly payments to be made. Under such circumstances, the gift has been held to be in the nature of an annuity. (*Matter of Kidd*, 142 Misc. 512; *Matter of Bamberger, supra.*) I, therefore, conclude that the gift to Muriel Savin Steben was of a similar nature.

All parties, including the life beneficiary, were before the court when the decree was entered directing the trustees to reserve $60,000 for the creation of this annuity. All controversies were settled as a result of compromise agreements growing out of protracted negotiations wherein all parties were fully represented. The widow, who was the residuary legatee under the terms of the will, relinquished her reversionary rights to the $60,000 fund and the life beneficiary of the trust acquired the right to dispose of it by will. It is these features which, to my mind, distinguish this case from those cited in support of a construction which would require the widow to now replenish the trust fund. In *Matter of Kohler* (231 N. Y. 353, at p. 376) the court stated: " It is only when an amount so set aside is, through fraud, inequity or mistake, found to be too small or too large that it can be changed, and then only through an application to the court to have the decree, pursuant to which the amount was originally fixed and determined, changed after due hearing of all persons interested." There is no such application now before the court.

Since I have determined the fund in question to be in the nature of an annuity, the trustee will be permitted to invade the principal when necessary to enable it to pay the annual income of $2,400. (*Matter of Kohler, supra; Matter of Vanderbilt*, 134 Misc. 574; *Matter of Burton*, 156 id. 175.) In the event that excess income be realized in the future, however, the invasion of principal should be restored. The court would recommend that the trustee make every effort to procure investments which will, in the future, produce a maximum income. That, however, is a matter of judgment for the trustee and not presently within the province of the court to dictate in the absence of a specific application therefor.

*Matter of Conant* (154 Misc. 338); *Matter of Brown* (133 id. 587), cited with respect to lack of statutory jurisdiction in the court to entertain the construction proceeding after final judicial settlement, are not applicable since the amendment to section 145 of the Surrogate's Court Act by chapter 18 of the Laws of 1937.

Settle decree.