In the Matter of the Estate of JOHN J. McKENNA, Deceased.

Surrogate's Court, Bronx County, March 12, 1940.

▮▮▮▮▮▮▮▮

*Davies, Auerbach, Cornell & Hardy* [*Sydney G. Soons, Howell D. Boyd* and *John N. Cooper* of counsel], for Robert Williamson and the Irving Trust Company, as trustees.

*George B. Fargis* [*Francis J. Murphy* of counsel], for Mary Hoey.

*Alfred Byrne*, for Florence Hayes.

*John T. Magan* for the Home for the Aged of the Little Sisters of the Poor.

*Cadwalader, Wickersham & Taft* [*William D. McCain* of counsel], for the Community Service Society of New York and the Salvation Army.

*Francis X. Stephens, Jr.*, for The Bronx County Society for the Prevention of Cruelty to Children.

*Walter G. Phelps*, for the Union Hospital Association of The Bronx.

HENDERSON, S. Questions of construction have been submitted in three of the proceedings to settle the various accounts of the trustees. One question is common to the testamentary dispositions expressed in subdivisions (a), (b) and (f) of paragraph " Fourth " of the will. The other question arises because of undistributed surplus annual net incomes remaining at prior annual rests with respect to subdivisions (a) and (f).

So much of the will as is material for this consolidated decision reads as follows:

" *Fourth.* All the rest, residue and remainder of my estate, both real and personal, and wherever situate, I give, devise and bequeath to my trustees hereinafter named, and the survivor, successor or successors of them, in trust, nevertheless, for the uses and purposes following, to wit:

" (a) To set apart from said residuary estate a fund, in cash or securities, or both, sufficient in the opinion of said trustees to produce an annual net income of One Thousand dollars ($1,000): to have and to hold said fund in trust, nevertheless, to invest and keep the same invested, during the life of Alice Perkins, who has been in my employ for many years, and to pay over to said

Alice Perkins in equal monthly installments the sum of One Thousand dollars ($1,000) in each year during her life, and from time to time to pay over the balance of the net income thereof, if any, in equal shares, to Laura Monroe Kimmelmann and Mary Hoey, or their survivor; and upon the death of said Alice Perkins, to pay, transfer and set over the principal of said trust fund in the manner hereinafter provided in Article Sixth of my Will for the disposition of the remainders of the trusts created by this will. * * *

" (f) To set apart from said estate a fund in cash or securities to produce an annual net income of One Thousand dollars, ($1,000); to hold said fund in trust during the life of Gertrude W. Glassford, and to pay to her in monthly installments the sum of One Thousand Dollars ($1,000) in each year during her life and to pay the balance of net income if any to Florence Hayes, and upon the death of said Gertrude W. Glassford to pay over the principal of said fund in the manner prescribed in Article Sixth of this my Will. * * *

" (j) To set apart from said residuary estate the sum of Thirty-five Thousand Dollars ($35,000) or securities having a total market value of Thirty Five Thousand dollars, ($35,000) to have and to hold said fund unto the trustees hereinafter named during the life of my late sister's friend Mary Hoey, to invest and keep the same invested, and to pay, transfer and set over the net income therefrom to or for the use of said Mary Hoey during her natural life; and upon the death of said Mary Hoey, to pay, transfer and set over the principal of said trust fund in the manner hereinafter provided in Article Sixth of this my Will. * * *

" (l) As soon after my death as is practicable, I direct the trustees hereinafter named to pay, transfer and set over so much of my said residuary estate as may remain after providing for the annuities and trust funds above created, to the charitable organizations named in Article Sixth of this my Will. * * *

" *Sixth.* Upon the death of each of the annuitants above named, * * * in sub-divisions (a), (b), (c), (d), (e), and (f) of Article Fourth in this my will and upon the death of each of the life beneficiaries of the trusts hereby created, * * * named respectively in subdivision (g), (h) and (j) of Article Fourth in this my Will, I direct said trustees to divide each of said funds so held for the benefit of each of said annuitants and of each of said beneficiaries into eight equal parts, and to pay transfer and set over said parts as follows: * * *" (Two parts to one hospital and one part each to another hospital, a church and four charitable institutions.)

The language used in subdivision (b) is identical with that used in above-quoted subdivision (a), except for the name and description of the life beneficiary. Dispositions are similarly expressed in

subdivisions (c), (d) and (e). The five trusts to pay income, created in subdivisions (g) to (k), inclusive, range in amount from $25,000 to $65,000. The dispositive language used in each is similar to that of subdivision (j) above quoted, except that the remainder of the trust created in (i) is not divided among the eight residuary legatees if a certain individual survives the trust, and that the entire remainder of the trust created in (k) goes to the church.

The testator has clearly expressed the distinction between pure annuities and trusts for the payment of income. There is not the slightest difficulty in ascertaining from an examination of this will the testator's separate and independent intention that the three life beneficiaries named in the questioned subdivisions should each be paid the exact sum of $1,000 each year and at all events. Later in his will he refers to them as annuitants. In his gift to each he omits any reference to income. He did not enjoin his trustees to make such payments out of income, but expressly directed them to pay each annuitant $1,000 in monthly installments, during each year of her life. Each is to receive no more and no less. The testator foresaw that the yearly income might fluctuate, and provided for any possible annual net income in excess of $1,000 by his gift of such surplus to a different beneficiary who was not otherwise interested in that particular fund. Thereby is discernible his intention that his trustees set apart a fund which at times might be more than sufficient to produce the specified net income annually, and that any surplus income would not go to the respective remaindermen, nor to his residuary legatees. He intended that each fund could be too large, but never too small. The testamentary directions to set apart funds each sufficient to produce an annual net income of $1,000 are merely incidental to the gifts of the annuities, and for the convenience of the estate. It was not intended thereby to limit or control the gift. Each of these gifts is a pure annuity and a demonstrative legacy with which the residuary estate is charged. (*Pierrepont* v. *Edwards*, 25 N. Y. 128, 131, 134; *Griffen* v. *Keese*, 187 id. 454, 466; *Matter of Proctor*, 235 App. Div. 6, 8; *Matter of Burton*, 156 Misc. 175, 179, 180.)

Whenever it appears that an amount set aside for the payment of an annuity is or may be too small or too large for the purpose, the fund may be increased or reduced as the circumstances require (*Griffen* v. *Keese, supra; Matter of Kohler*, 231 N. Y. 353, 373, 376; *Matter of Clark*, 251 id. 458, 463; *Matter of Vanderbilt*, 134 Misc. 574, 581; affd., 229 App. Div. 574, 580; *Matter of Bird*, 157 Misc. 748, 752; affd., 250 App. Div. 848), in a proceeding brought by trustees for the settlement of their account wherein they seek a

construction of the will under which they act, and ask instructions for their conduct in the premises, as well as in an application by an annuitant or a residuary legatee to have a prior decree changed in that respect. (*Griffen* v. *Keese, supra; Matter of Vanderbilt, supra; Matter of Burton, supra; Matter of Bird, supra.*)

To a certain extent, this will resembles that construed in *Matter of Kohler* (*supra*). The trustees, under the fourth paragraph of this will, were given the gross residuary estate for the purpose of setting apart six annuity funds, of setting up five income trusts and of paying the net residuary as directed in subdivision (b). The remainders of the funds set apart under the questioned subdivisions are given in paragraph " Sixth " to the legatees of the true or net residuary estate bequeathed under subdivision (1) of paragraph " Fourth."

The various funds were set apart and the several trusts were set up prior to the entry on March 18, 1926, of the decree settling the account of the executors. Prior to and under said decree, six of the residuary legatees were paid over $23,000 each out of the net residuary principal. The other residuary legatee was likewise paid over $46,000.

The sufficiency of the funds set apart for annuities has not been questioned heretofore, but now it appears that those set apart under subdivisions (a), (b) and (f) are each insufficient to produce an annual net income of $1,000.

It has been urged that the principal of each fund should be invaded for the purpose of supplying any yearly deficiency. That would be the proper rule were there no residue after providing for the annuities. However, there was a net residue which was distributed as above noted, to the same beneficiaries as take the remainders of the three questioned annuities and in like proportions. These beneficiaries received their respective proportions of the net residue, subject to the satisfaction of the annuities. The testator intended their residual legacies to be effective only after ample provision had been made for his annuitants. It appears that the present provisions for the annuities in question are inadequate. That the residuary legatees may be directed to repay any assets they have received in excess of the amounts properly payable to them, has long been the rule under the equitable powers of the Surrogates' Courts and the statutory injunction " to make a full, equitable and complete disposition of the matter by such order or decree as justice requires." (Surr. Ct. Act, § 40, subds. 3 and 4.) In 1936 this rule received express statutory sanction. (Surr. Ct. Act, § 267.)

All the residuary legatees are parties to the three proceedings. They will be directed to return, *pro rata,* to the trustees so much of

the residue heretofore received by them as may be sufficient to increase each fund to an amount which, under all reasonable circumstances, will produce an annual net income of $1,000. To direct merely an invasion of the present fund might not be equitable for the annuitant might survive its complete expenditure. The plan I have adopted gives effect to the testator's complete scheme, while an invasion of principal was not his intention if his estate were large enough to provide sufficient separate funds.

I am not unmindful of the decision in *Matter of Savin* (171 Misc. 818) wherein the court refused to direct the residuary legatee, who was the testator's widow, to repay out of the residue which had been paid to her, a sum sufficient to increase an annuity fund to an adequate amount. He found that it would be inequitable to require such replenishment, because of the following circumstances. Upon the settlement of the contested probate the amount of the fund was fixed and the residuary legatee had released her reversionary interest in such fund. Upon the settlement of the executor's contested accounting, this fund was increased by compromise agreements and the widow and all interested parties released their respective reversionary interests in the additional amount. Under these agreements the annuitant was given a power to dispose of such augmented fund by will, failing which the fund would descend to her surviving issue, or, failing in both respects, it would pass under the terms of the will as modified by the agreements. There are no circumstances in the proceedings before me which would make any replenishment inequitable.

If the interested parties cannot agree upon the amounts of refund, I will determine them at a hearing for that purpose upon five days' notice to each party who has appeared herein.

The second question arises because the trustee retained the sum of $174.98, the surplus net annual income accruing after the death of Laura Monroe Kimmelmann and remaining upon their annual rest on November 25, 1936, in their administration of the fund set apart under subdivision (a), and the further sum of $594.94, the surplus net annual income likewise accruing and remaining upon their annual rest on November 25, 1938, in their administration of the fund set apart under subdivision (b).

The surplus income beneficiaries and the trustees contend that each annual surplus is payable to the legatee thereof. Counsel for two of the charitable remaindermen and residuary legatees urges that such surplus should be retained and applied to deficiencies in future years. He cites *Matter of Bloomingdale* (172 Misc. 218, 222) as authority for directing the trustees to retain each surplus and to apply it against any subsequent failure or failures of the respective

annual net income to equal $1,000. Whether or not the rule there laid down may be extended, as contended, to such requested retention and application, is presently academic in the absence of any consent by the respective beneficiaries of such surplus income that the trustees hold such surplus. Each was entitled to any surplus income remaining in the hands of the trustees at each annual rest. Unless she consents or directs to the contrary, it is then payable to her absolutely. In *Matter of Bloomingdale (supra)* the conclusion was expressly based upon a finding that the beneficiary of the surplus income had consented to the retention of the surplus. There is no such consent in either matter before me. To construe the will as providing for an accumulation of income to pay annuities would violate the statute (Pers. Prop. Law, § 16) and impute an unlawful purpose to the testator. (*Hawthorne* v. *Smith*, 273 N. Y. 291, 301.) On the contrary, the testator has expressly bequeathed any surplus annual net income. The accumulation urged by the two charities is invalid. (*Matter of Kohler, supra; Matter of Tilden*, 5 Dem. 230, 232; modfd. in another respect, 44 Hun, 441; *Spencer* v. *Spencer*, 38 App. Div. 403, 411.)

The trustees are directed to pay the surplus amounts retained by them to the respective legatees thereof.

Proceed accordingly and settle separate decrees.