In the Matter of the Estate of ANN K. FISHER, Deceased.

Surrogate's Court, New York County, April 10, 1940.

*Hill, Lockwood & Redfield*, for the petitioner.

*Conklin & Bentley*, for Edith M. Maynard, individually and as executrix, etc., of Oscar H. Maynard.

*Edwin C. Hamburg*, for Joseph O. Young, administrator, etc., of Hester Bates, deceased.

FOLEY, S. In this accounting proceeding there is involved the question of the validity of a claim which arose more than thirty years ago. The testatrix died in 1904. Her will was probated in that year. In January, 1905, a claim for board and lodging of the testatrix was presented to the estate by one Hester Bates. The matter was adjusted and an agreement was made authorizing the executors to pay to her the sum of $15,000. On April 15, 1908, one of three parcels of real estate owned by the testatrix was conveyed to the creditor for a consideration of $9,000 in partial satisfaction of her claim, leaving an apparent balance of $6,000 still due. Previously, however, other assets of the estate had been sold which, after the payment of funeral and administration expenses and commissions, would have left an additional sum of $3,103.64. Because of the lapse of time and the inability of the parties to find the records of the estate in the office of the attorney for the executors, it is impossible to prove whether the sum of $3,103.64 was paid to the creditor or whether, indeed, she did not accept the property actually conveyed to her in satisfaction of her total claim. Subsequently, in or about 1911, Hester Bates became an incompetent. About ten years later she was adjudged an incompetent and a committee of her estate was appointed. The committee was a daughter of one Althea Miller. The latter was a legatee under the will of the testatrix. In 1923 Dr. Jamison, the then surviving executor of the estate, paid the sum of $6,000 to Althea Miller, an amount which appears to be far in excess of any amount which could have been due her as legatee. So far as appears, however, no demand was made upon Dr. Jamison by her committee for the unpaid balance due the incompetent. In the same year Dr. Jamison presented a claim to the committee of the incompetent in the sum of $12,000 for her care and maintenance in a sanitarium. This claim was settled by the payment of the sum of $4,172.71 to Dr. Jamison. Certainly in the final settlement of this claim no assertion was made by the committee of the incompetent that any unpaid balance of her claim against this estate was due from Dr. Jamison, as executor.

No accounting of the acts of the executors of the estate of the testatrix has ever been had. The assets set forth in the present account as the property of the testatrix appear to have been obtained from the schedules in the transfer tax proceedings filed in June, 1905. No money or property belonging to the estate of the testatrix is now in the hands of the present accountant, who is the executor of the deceased executor, Dr. Jamison. No evidence has

been submitted showing whether Hester Bates was paid or was not paid the balance of the moneys due her.

The accounting executor relies upon the presumption of payment because of the lapse of the long period of time since the claim arose. The facts surrounding the claim and the authorities justify the finding of such presumption. (*Bean* v. *Tonnele*, 94 N. Y. 381; *Matter of Neilley*, 95 id. 382; *Calhoun* v. *Millard*, 121 id. 69; *Martin* v. *Stoddard*, 127 id. 61; *Conkling* v. *Weatherwax*, 181 id. 258; *Matter of Lewis*, 190 App. Div. 891.)

In *Bean* v. *Tonnele* (94 N. Y. 381), in an action upon a promissory note, where a period of more than twenty years had elapsed after the note became due, it was held that, although the Statute of Limitations was not a bar because of the non-residence of the defendant, yet the lapse of time raised the presumption of payment.

In *Conkling* v. *Weatherwax* (181 N. Y. 258), where an action was brought to enforce a legacy as a lien upon real property brought over thirty years after the death of the testator, the court held that the burden of proving non-payment rested upon the plaintiff. In the discussion of the authorities and the facts of the case the court there said (p. 267):

" The right of the plaintiff to her legacy arose over thirty years before the action was brought, which gave rise to a presumption of fact that it had been paid. (*Macauley* v. *Palmer*, 125 N. Y. 742; *Bean* v. *Tonnele*, 94 id. 381; *Jackson* v. *Sackett*, 7 Wend. 94; *Jackson* v. *Pierce*, 10 Johns. 413, 417; Lawson on Presumptive Ev. 370, 382; Buswell on Limitations, § 335; Jones on Mortgages, § 915.)

" ' An unexplained neglect to enforce an alleged right, for a long period, casts suspicion upon the existence of the right itself,' and ' it is the law of courts of equity, independent of positive legislative limitations, that they will not entertain stale demands.' (*Bean* v. *Tonnele*, 94 N. Y. 381, 386; *Matter of Neilley*, 95 id. 382, 390; *Calhoun* v. *Millard*, 121 id. 69, 82.) "

All but three of the ten legatees under the will of the testatrix are deceased. The original executors of the estate of the testatrix have died, as has the administrator of the estate of Hester Bates and one of the administrators *de bonis non* of her estate. Not a single individual who might possibly shed any light as to the payment or non-payment of the claim is now alive. Nor are there any books, records or documents of any kind now available bearing upon the unpaid balance of the claim. It is stated that Hester Bates was without means while Dr. Jamison was a man of considerable wealth. As was said in *Bean* v. *Tonnele* (*supra*, p. 386): " The fact that a plaintiff during the period when he might have

enforced his demand by suit, if he had one, was in indigent circumstances and needed the use of his means, is we think, a circumstance tending to fortify the presumption that the demand has been paid or otherwise satisfied."

Upon the circumstances here disclosed the surrogate holds that the claim is a stale demand which cannot be enforced. In the interest of equity and justice the claim must be presumed to have been paid. The laches here shown to be present do not permit the reopening of transactions of the past. As was said by the court in *Matter of Broderick* (88 U. S. 503, 519), where the complainants, who lived in a remote and secluded region far from means of information, and had never heard of the decedent's death, or of the sale of his property, or of any events connected with the settlement of his estate until about eight or nine years after the probate of the will: " Parties cannot thus, by their seclusion from the means of information, claim exemption from the laws that control human affairs, and set up a right to open up all the transactions of the past. The world must move on, and those who claim an interest in persons or things must be charged with knowledge of their status and condition, and of the vicissitudes to which they are subject. This is the foundation of all judicial proceedings *in rem*."

Similarly, in *Clarke* v. *Boorman's Executors* (85 U. S. 493, 509), the court, after discussing the general doctrines of courts of equity concerning lapse of time, laches and stale claims, stated: " Every principle of justice and fair dealing, of the security of rights long recognized, of repose of society and the intelligent administration of justice, forbids us to enter upon an inquiry into that transaction forty years after it occurred, when all the parties interested have lived and died without complaining of it, upon the suggestion of a construction of the will different from that held by the parties concerned, and acquiesced in by them through all this time."

Submit decree on notice denying the claim and settling the account accordingly.