In the Matter of the Estate of SOLOMON ALTER, Deceased.

Surrogate's Court, New York County, October 1, 1941.

*Frederick W. Scholem* [*Matthew B. Sentner* of counsel], for Celia Alter, petitioner.

*Edward S. Alter*, for Julius Alter, sole surviving trustee, respondent.

*Herman Goldman* [*Benjamin Wiener* of counsel], for Anna Perle, Miriam Kessner, Eli Zion and Irving Zion, respondents.

*Miller, Bretzfelder & Boardman* [*Bertram Boardman* of counsel], for Fannie B. Alter and Lester R. Cahn, as executors of Mark Alter, respondents.

*Jacob Leo Frank*, for Nathan Alter and Elias Alter, respondents.

*Maurice E. Downing*, special guardian.

FOLEY, S. The remaining issue in this proceeding arises out of the objections filed to the account by Celia Alter, the widow of the testator. She has demanded that the residuary legatees be required to repay to the estate sums alleged to have been received by them so as to increase the capital of the annuity fund in an amount large enough to pay her annuity out of income. The testator died in the year 1929. Under the terms of the will the executors were directed to set apart a sum sufficient to produce an annuity of $2,400 for the benefit of the widow.

The executors allotted certain mortgages and mortgage certificates of the face value of $45,000 for the purpose of paying the

annuity. The income on the fund in the earlier years of the administration of the estate was sufficient to pay the annuity. In the past eight years the income has been insufficient and underpayments to the widow have resulted. In a former accounting proceeding of the executors and trustees the arrangement and investments of the trust were set forth. No objection to the size of the fund or its component parts was asserted by the widow in the prior accounting proceeding. The decree judicially settling the account was signed on June 9, 1932. Under its terms a further and final distribution of the balance of the assets of the estate stated to be the value of approximately $110,000 was directed to be made in proportionate shares to the residuary legatees. The latter amount was not a cash distribution. It represented the value of six parcels of real estate which remained in the estate. The annuity was continued to be paid to the widow in the full amount fixed in the will until July of 1933. Because of the conditions in the real estate market and the reduced interest earned upon the mortgages and mortgage certificates within the fund set apart for the widow, a sum fluctuating between $1,500 and $1,800 per year was derived from the investments. While she appears in 1933 to have employed an attorney, who presently represents her in this proceeding, to obtain for her the deficits in the annuity, no formal action was taken by her during the subsequent period of seven years until the time of the filing of her objections to the pending account.

The relief sought by the widow may be divided into two parts: *First*, restitution by the residuary legatees because of the transfer of the realty aggregating $110,000 in value and, *second*, restitution of the moneys aggregating $43,000 distributed to them and ratified by the prior decree on accounting.

In the ordinary case the direction for the payment of an annuity in a will is a charge upon the residuary estate. (*Griffen* v. *Keese*, 187 N. Y. 454; *Matter of Kohler*, 231 id. 353; *Matter of Vanderbilt*, 134 Misc. 574; affd., 229 App. Div. 574; *Matter of McKenna*, 173 Misc. 579 [HENDERSON, S.].) Under these decisions it is also the rule that in certain circumstances a fund originally set aside for the purpose of the payment of an annuity or a fixed annual sum may be decreased or enlarged. These rules, however, have no application to the present situation because of the conduct and affirmative acts of the widow, and her acquiescence, which constitutes an estoppel against her and a bar to the relief which she seeks. Under this conclusion the application of the widow based upon the first form of relief is denied. Her actions arose in a series of negotiations

between herself and the attorney for the residuary legatees shortly after the prior decree in the accounting proceeding was made in 1932. It has been stated that the remaining assets of the estate at that time consisted of six parcels of real estate. The residuary legatees formed a corporation to take over these properties. They entered into a written agreement as between themselves for the fixation of their respective interests in the corporation. The agreement also contained a provision whereby the corporation became liable for any deficits in the annuity payments to the widow. The testimony of Mr. Zion, the representative of the legatees, that he communicated the contents of this agreement to the widow and fully apprised her of her rights is accepted by me as true. The contradictory testimony of the widow that she was not informed as to any of the arrangements is plainly untrue. In effectuation of the arrangement between the parties, the widow joined in the execution of the deeds of the parcels of real estate to the corporation. Her denial in her testimony that she ever executed these deeds is false. Her version of the transaction is shattered by the deeds themselves and by the concession of her counsel that she signed and acknowledged them.

It further appears that no dividends or cash distributions of any kind were made by the realty holding corporation. All of the parcels of real estate were lost by foreclosure or deed in lieu of foreclosure. The corporation is now defunct. The residuary legatees received no financial benefit either directly or indirectly from its operation. If the trustees had continued to hold the real estate as further security for the payment of the annuity to the widow, the assets would have been lost to the estate in the same way that they were lost to the corporation. Under these circumstances it would be inequitable to compel the residuary legatees to repay moneys which they never received. It would likewise be unjust to grant relief to the widow who actively participated in the transfer of the estate assets to the corporation. She was willing at the time to look to the corporation for the payment of deficiencies in her annual allowance. She thereby relieved the residuary legatees of any personal financial obligation to her. The complete loss of its assets was a misfortune, but that misfortune may not be turned belatedly into a change of position on her part unsupported by legal grounds. (*Matter of Garvin*, 256 N. Y. 518.) By her own acts she is precluded from obtaining the relief which she seeks. (*Cowenhoven* v. *Ball*, 118 N. Y. 231, 234; Surr. Ct. Act, §§ 80 and 274; *Joseph* v. *Herzig*, 198 N. Y. 456; *Matter of Hoyt*, 160 id. 607; *Bowditch* v. *Ayrault*, 138 id. 222; *Matter of Schley*, 202 App. Div.

169; affd., 234 N. Y. 616; *Matter of Roche*, 259 id. 458; *Matter of Rosenthal*, 141 Misc. 404.) No liability, therefore, exists on the part of the legatees arising out of the distribution of the realty.

Again, as to the second form of relief sought, the conclusiveness of the previous decree of 1932 and the estoppel against the widow caused by her conduct in transferring the final real estate assets as above stated and her laches, prevent any direction to the residuary legatees to make restitution of any part of the moneys aggregating $43,000 paid to them and set forth in the prior account.

In *Matter of Kohler* (231 N. Y. 353, 376) the Court of Appeals stated: " It is only when an amount so set aside is, through fraud, inequity or mistake, found to be too small or too large that it can be changed, and then only through an application to the court to have the decree, pursuant to which the amount was originally fixed and determined, changed after due hearing of all persons interested." There is no such application to amend the prior decree here. If there had been, however, it would have been denied because no fraud, inequity or mistake has been shown. For similar reasons, if the prior decree be deemed to be *res judicata*, no legal or equitable grounds have been shown to justify a direction for the residuary legatees to return any of the moneys actually received by them. If any inequity exists, it has arisen out of the conduct of the widow. The facts in the present case are generally similar to those in *Matter of Savin* (171 Misc. 818), where Surrogate MILLARD declined to direct restitution for the purpose of increasing the fund originally set aside for the payment of an annuity.

The application of the widow for the replenishment of the annuity fund is, therefore, denied. The sixth and eighth objections filed by her to the account are overruled.

·The widow, however, is entitled to certain forms of relief in the present situation. The surrogate holds that the fixed annual sum payable to her is a true annuity. It was so specifically described by the testator in his will. The will cannot be interpreted as intending that the payment of the annual amount should be confined to the income earned upon the fund. The word " income " was not mentioned in it. In the event of a deficit in income, the invasion of the principal was authorized to make up the necessary fixed annual amount. (*Matter of Kidd*, 142 Misc. 512; affd., 225 App. Div. 663; *Matter of Sidenberg*, 147 Misc. 742; *Matter of Smathers*, 133 id. 812.)

Because of the nature of the annuity created by the will with the inferential right on the part of the trustees to invade the principal of the fund to meet deficits in income, the surrogate directs

that the trustees sell such of the assets as will pay the present accumulated deficit due the widow. Future deficiencies in income below the amount of the annuity should likewise be paid out of principal assets. For the further protection of the widow a determination is made that the accumulated deficits constitute a lien upon the capital assets.

[Other directions included in the original decision of the surrogate omitted because not of general interest and because of their subordinate importance.]

Submit decree on notice in accordance with this decision and the prior decision of the surrogate disposing of the other objections filed to the account. (N. Y. L. J., Nov. 2, 1940, p. 1387.)