In the Matter of the Estate of MARGARET R. A. BUNKER, Deceased.

Surrogate's Court, New York County, May 10, 1944.

*James D. Ouchterloney* and *Harry A. Leigh* for Bank of Manhattan Company, petitioner.

*Enos Throop Geer* and *E. W. Poindexter* for Union Trust Company of the District of Columbia, as administrator *c. t. a.* of Mary A. Meyn, and another, respondents.

FOLEY, S. This is a proceeding for the judicial settlement of the account of the ancillary executor of the estate of William Bunker for the latter's acts and transactions as legal life tenant under the will of the testatrix. William Bunker was the husband of the testatrix. He died on May 18, 1942. Objections have been filed to the account which seek to surcharge his estate for losses resulting from the retention of and investment in nonlegal securities by the life tenant during his lifetime.

The testatrix died on August 1, 1906. Her will was admitted to probate on November 10, 1906. She bequeathed to her husband during his life the "net rents, profits and income" of her residuary estate and gave the principal thereof after his death to her two sisters, Mary Agnew Meyn and Elizabeth Agnew Howard-Martin, share and share alike. She appointed her husband and her two sisters as executors. They qualified and letters testamentary were issued to them.

The vested remaindermen predeceased the life tenant. Mrs. Meyn died on August 25, 1925, and Mrs. Howard-Martin died on April 2, 1926.

The objectants here are the present legal representatives of their estates. They charge that the life tenant had no authority under the terms of the will to retain or purchase nonlegal

securities and that his estate is therefore liable for any losses resulting from the violation of his duty. The basis of their objections is that the life tenant was a trustee for the remaindermen and that since the will was silent as to the powers of investment, he was restricted as such trustee to investments in securities authorized by law.

The questions presented for immediate determination in this estate are:

(1) Whether the objectants are not estopped from attacking the investments made by the life tenant because of the fact that the remaindermen, their predecessors in interest, actively participated in the purchase of nonlegal investments in their capacities as executors over a long period of years in the beginning of the administration of the estate.

(2) Whether they are not further estopped by the conduct and acquiescence of their predecessors over a further long period of years from the time after the assets were turned over to the life tenant and until the deaths of the respective remaindermen.

(3) Whether they are not further precluded from attacking the transactions of the life tenant in nonlegal securities because of a decree dated July 3, 1913, on the first accounting of the executors.

In 1911 the executors instituted a proceeding for the judicial settlement of their account and supplemental account which covered transactions from November 12, 1906, to April 23, 1913. The remaindermen individually were not made parties to that proceeding, but as they were accounting parties they were before the court in both capacities as executors and as beneficiaries. " * * * in the truest sense every fiduciary is present as an individual in every accounting proceeding wherein he asserts either the extent of the property with which he is chargeable or the amount of the credits to which he is entitled." (*Matter of Fletcher*, 173 Misc. 711, 713, revd. on other grounds, 259 App. Div. 335; *Matter of Sullivan*, 264 App. Div. 65, 68.)

It is contended by the objectants that the fact that they appeared specially by separate counsel in some way affected the conclusive effect of the decree made in the accounting proceeding. That contention is overruled. True, there was a special appearance limited to a question as to whether certain assets were principal or income. There is no significance in such a special appearance. The situation is frequently presented in this court where an executor or administrator may

be represented by an attorney in the accounting proceeding. The fiduciary may have a personal or other form of claim against the estate. He or she may retain separate counsel for the establishment and collection of the claim. Nonetheless that question and every other matter within the accounting, and particularly the financial interest of the beneficiary in the estate, are made conclusive by the decree.

The executors disclosed in their accounts that they had retained some of the securities left by the testatrix which were nonlegal investments and from time to time they had purchased other securities of a similar character.

By a decree of this court, dated July 3, 1913, the accounts of the executors were judicially settled and they were directed to " assign, transfer and pay over, in accordance with the terms of the will of said decedent to William Bunker, as life tenant, to be held by him as life tenant, the following securities and cash constituting the balance of principal then remaining in their hands." Then followed the list of those investments. Pursuant to the decree, the executors turned over to the life tenant certain investments left by the testatrix and new investments which they had purchased. The life tenant continued to hold some of the original investments to the date of his death on May 18, 1942, and purchased and sold others, without confining himself in making such investments to those legal for trust funds.

The objections upon this phase of the proceeding are overruled. I hold that the remaindermen were estopped, and their representatives are now estopped, by their acts and conduct, from asserting any liability against the life tenant or against the executor of his estate. (*Central Hanover Bank and Trust Co.* v. *Russell*, 290 N. Y. 593, affg. 264 App. Div. 771; *Matter of Garvin*, 256 N. Y. 518; *Matter of Hall*, 164 N. Y. 196; *Matter of Niles*, 113 N. Y. 547; *Matter of Junkersfeld*, 244 App. Div. 260; *Ungrich* v. *Ungrich*, 141 App. Div. 485, affd. 207 N. Y. 662; *Hine* v. *Hine*, 118 App. Div. 585; *Matter of Collins*, 178 Misc. 521; *Matter of Alter*, 177 Misc. 509; *Matter of Wildenburg*, 177 Misc. 49; *Matter of Rolston*, 162 Misc. 194; *Matter of Sidenberg*, 147 Misc. 742.)

As to the administration of the estate by the executors prior to July 3, 1913, the date of the decree, it clearly appears that the remaindermen not only acquiesced in the retention of the securities left by the testatrix but expressly consented thereto and actively participated in the purchase and sale of new nonlegal investments with their coexecutor, the life tenant. More-

over, they were bound by the decree because of their procurement of its entry. (Surrogate's Ct. Act, §§ 80, 274; *Joseph* v. *Herzig,* 198 N. Y. 456; *Matter of Hoyt,* 160 N. Y. 607; *Bowditch* v. *Ayrault,* 138 N. Y. 222; *Cowenhoven* v. *Ball,* 118 N. Y. 231; *Matter of Schley,* 202 App. Div. 169, affd. 234 N. Y. 616.)

They were also estopped under the terms of the decree to claim that the estate was a trust and not a legal life estate and that the husband should have qualified as a trustee. Upon this phase of the case the decree correctly followed the terms of the will. (*Matter of von Kleist,* 265 N. Y. 422; *Matter of Rowland,* 153 App. Div. 327; *Matter of Hamlin,* 141 App. Div. 318.)

They and their legal representatives are also estopped to contend that the securities turned over to the life tenant should have been held in kind until the death of the life tenant. The legacy was not specific in nature. The executors and the life tenant were therefore authorized to sell such securities and reinvest the proceeds.

As to the transactions of the life tenant subsequent to the date of the decree and the delivery to him of the assets, the remaindermen were estopped from challenging the legality and propriety of the investments because of their concurrence and further acquiescence in his acts. They joined with the life tenant in obtaining the decree which approved the course of conduct and the method of their handling of the securities during the period of their executorships. They delivered the nonlegal securities to the life tenant pursuant to the decree, without objections on their part. They thus had full knowledge of the character of the securities transferred to the life tenant. In the subsequent conduct and administration of the estate, the life tenant continued to act for the duration of his life estate under what was the settled investment policy fixed by the remaindermen and himself. (*Matter of Sidenberg,* 147 Misc. 742, *supra.*) By their failure to protest to the life tenant for a further period of thirteen and fourteen years respectively to the dates of their deaths, or to seek an accounting, or to demand the sale or change of any of the investments held and made by the life tenant, the remaindermen effectively acquiesced and concurred in the course of management of the investments in his possession. Approximately nineteen years of continuous policy had elapsed from the time of the qualification of the executors. Either concurrence in the act or acquiescence without original concurrence will relieve a trustee from liability upon any claim for breach of trust. (*Butterfield* v. *Cowing et al.,* 112 N. Y. 486.)

Upon the deaths of the remaindermen, their representatives made no move to challenge the validity or propriety of the investments although they were fully advised of their nonlegal character. Such knowledge must be imputed to them from the fact that in the proceedings to fix the New York State transfer tax in the estates of the remaindermen, they enumerated in detail as a basis for fixing such taxes, the securities at that time constituting the assets in the hands of the life tenant, and the market values of such securities as of the date of the respective deaths of the remaindermen in 1925 and 1926. The values of these securities on those dates were less than their values when turned over to the life tenant under the decree of July 3, 1913. While there was a general statement in the transfer tax papers of a reservation of the right to an accounting in the estate of the testatrix here, no specific complaint of maladministration was set forth. There is no evidence that there was then made any formal or informal protest as to the investments, many of which were in nonlegal securities. During the further period of about sixteen years following the deaths of the remaindermen and until the present accounting, their representatives at no time objected to the investments retained or made by the life tenant or sought to compel any accounting. Only now, for the first time, after a lapse of more than thirty-six years, when the life tenant and the remaindermen are all deceased, are the acts and conduct of the life tenant in dealing with the securities of the estate attacked. Since the remaindermen could not complain or take advantage of a situation which they had themselves created by participation and acquiescence in the investments (*Woodbridge* v. *Bockes,* 59 App. Div. 503, affd. 170 N. Y. 596), their representatives cannot object now that losses have resulted. The actions of the remaindermen in approving the investments and concurring and acquiescing in the acts of the life tenant operate as an estoppel against the objectants who are the representatives of their estates. (*Central Hanover Bank and Trust Co.* v. *Russell, supra.*) In that case the Court of Appeals went even further. It held that " a settlor of a trust, who retained a testamentary power of appointment over the remainder limited upon life estates of the settlor and of her sister, by joining with her sister in approving investments of funds of the trust  *  *  *  precluded the appointees named in her will from objecting to the investments thus approved." (*City Bank Farmers Trust Co.* v. *Cannon,* 291 N. Y. 125.)

Thus, if appointees who take by virtue of the exercise of a power under a deed or will would be precluded by the actions of the donee of the power, the rule of estoppel should be more readily applied against those who merely stand in the place of their decedents, whose acts they seek to disaffirm after their deaths. It is also significant that the representatives of the remaindermen stood idly by for long periods of years without taking any steps to attempt to reform a condition which they knew existed. They could have complained sooner. "From her long silence, there is a presumption of fair dealing which overrides any presumption of wrongdoing growing out of the trust relation of the parties." (*Geyer* v. *Snyder et al.*, 140 N. Y. 394, 402.) The principals to the transactions here involved have all died. Equitable principles of estoppel and acquiescence preclude a surcharge for any losses sustained in such cases. (*Matter of Fisher*, 173 Misc. 848, 851, citing *Clarke v. Boorman's Executors*, 85 U. S. 493, 509; *Matter of Volkenberg*, 160 Misc. 257, affd. 251 App. Div. 800.) In *Clarke* v. *Boorman's Executors* (*supra*) there is the following pertinent statement: "Every principle of justice and fair dealing, of the security of rights long recognized, of repose of society and the intelligent administration of justice, forbids us to enter upon an inquiry into that transaction forty years after it occurred, when all the parties interested have lived and died without complaining of it, upon the suggestion of a construction of the will different from that held by the parties concerned, and acquiesced in by them through all this time."

No claim of fraud or deception practiced upon the remaindermen by the life tenant has been made here as a basis for surcharge. The integrity of the life tenant has not been questioned.

In view of the findings of estoppel by active participation, consent and acquiescence, the determination of the question as to whether the life tenant as trustee for the remaindermen was required to convert the securities left by the testatrix into investments legal for trust funds or to make new investments in such legal securities exclusively becomes unnecessary.

A hearing on the remaining issues as to whether the estate of the deceased life tenant is chargeable with negligence or lack of prudence in making speculative investments (*King* v. *Talbot*, 40 N. Y. 76) is set for the 13th day of June, 1944, at 10:30 A.M.

Proceed accordingly.