In the Matter of the Estate of JOHN KENNEDY TOD, Deceased.*

Surrogate's Court, New York County, May 24, 1940.

*Olin, Clark & Murphy,* for Robert E. Tod and Central Hanover Bank and Trust Company, trustees, petitioners.

*William G. Murphy [George T. Manuel* of counsel], for Robert E. Tod, individually.

*Shearman & Sterling [E. Lacy Finnan* of counsel], for Guy Fairfax Cary and The Fifth Avenue Bank of New York, as executors of Maria Kennedy Tod, and The Fifth Avenue Bank of New York, as ancillary executor of Maria Kennedy Tod, deceased, respondents.

* Modfd., 260 App. Div. 627.

DELEHANTY, S. The trustees of deceased acting under the seventeenth clause of the will and the third clause of the first codicil thereto are here accounting and seek construction of the testamentary provisions under which they are acting. In the seventeenth clause of the will deceased bequeathed certain securities to his trustees with the direction to them

" to apply Sixty-five thousand dollars ($65,000) per annum out of the net income thereof not less frequently than semi-annually to the use and benefit of my   *   *   *   wife during her lifetime and to pay over the balance, if any, of such net income to   *   *   * Robert Elliot Tod.

" If in any year the net income of said trust fund payable to my wife shall be less than Sixty-five thousand dollars ($65,000), I direct my Trustees to advance out of principal to income sufficient to make good the deficiency; it being my desire and intention that from the time of my death my wife shall receive Sixty-five thousand dollars ($65,000) per annum out of said trust fund, whether or not the net income thereof shall be sufficient for that purpose."

By the third clause of his first codicil he provided: " In the Seventeenth Clause of my said will, I have left to my trustees various securities out of which and the income thereof my wife is to receive payments at the rate of sixty-five thousand dollars ($65,000) per year. I hereby increase the payments to be made therefrom to my said wife to the sum of eighty thousand dollars ($80,000) per year and in order to provide for such increased payments of fifteen thousand dollars ($15,000) per year, I hereby increase the corpus of said fund by such an amount as added to the securities referred to in said Seventeenth Clause will produce an annual income of eighty thousand dollars ($80,000) over and above the necessary and proper taxes, charges and expenses of said fund. Such addition to the corpus of said fund shall be in securities which shall be exempt to the fullest extent possible from all Federal and New York State income taxes, and if there be not sufficient of such securities in my estate, the same shall be purchased for this fund. My wife shall be entitled to receive payments from the income of this fund as thus augmented from the time of my death to the full extent of eighty thousand dollars ($80,000) per year."

The actual income from the augmented trust fund equaled or exceeded $80,000 per year up to June 2, 1935. Thereafter the income was less than $65,000 per year. During the interval between June 2, 1935, and August 3, 1936, $80,000 per year was paid to the income beneficiary though the fund did not earn that amount. Resort to principal was had to make the payments in

this interval. Thereafter the income beneficiary received only $65,000 per year. The income being insufficient for this payment enough of principal was taken currently to make up the total of $65,000.

The widow of deceased died on September 23, 1939, and the trust thereby terminated. One of the trustees is the remainderman. The executors of the deceased life tenant contend that she was entitled under the testament of deceased to receive $80,000 per year and that the balance which should have been paid to her is now due her estate. The remainderman contends that the quoted text authorized the invasion in principal only for the purpose of assuring payments up to $65,000 per year.

The remainderman urges that there has been a practical construction of the will by reason of the failure of the widow to initiate before her death proceedings to compel larger payments. He also urges that he should be preferred in any construction because he is of the blood of deceased whereas the money claimed to be due the widow will now under her will go to persons of different blood. Neither of these points is worthy of extended discussion. The case here is one in law between the widow and the remainderman. No accounting was made by the trustees after the reduction of the payments to the widow. No basis exists whatever for holding that her lack of action for the intervening three years constituted any practical construction by her. The question is, what did the deceased intend to do for his widow? If the trustees failed to obey the directions of the testator and failed to make payments directed to be made for her benefit her representatives are as much entitled to claim the amount unpaid as she would have been were she living and a party to this proceeding.

The real argument of the remainderman is based on his assertion that there is to be found in the third clause of the first codicil an alteration of the original purpose of deceased declared in the will which gave his widow absolute assurance of a stated sum by giving her resort to income and to principal if necessary. A fair reading of the text of the codicil gives no support to such an argument. That deceased had in mind primarily the welfare of his wife must be conceded and must be accepted as the starting point in a construction of his text. In his will he made certain that shrinkage in income would not result in shrinkage in his wife's yearly resources. Between the date of the will and the codicil he determined evidently that his provision of $65,000 annually was not enough for her and so by the codicil he increased the annual sum payable to $80,000. In his codicil he adverts to the fact that he had left to his " trustees

various securities *out of which* and the income thereof " his wife was to receive $65,000 annually. He then said: " I hereby increase the payments to be made *therefrom* to my said wife to the sum of $80,000 per year." Up to this point in his text no one can doubt that deceased's purpose was to have the $80,000 paid annually from income, if earned, but in any case from principal to the extent necessary. The later text of the codicil says that " in order to provide for *such* increased payments " the testator increases the corpus of the fund by an amount which would suffice to produce $80,000. The further text of this clause says: " My wife shall be entitled to receive payments from the income of this fund as thus augmented from the time of my death to the full extent of eighty thousand dollars ($80,000) per year." From these further excerpts argument is made that from and after the increase of the fund the widow is limited to income except that if the income fell below $65,000 in any year she was to have resort to principal to supplement income up to but not beyond $65,000 per year.

The simple plan of this testator to care first of all for his wife is thus argued to be the involved program just outlined. No fair reading of deceased's text can support so tortuous a scheme. Deceased stated forthrightly that he wanted his wife to have a *fixed* sum. The remainderman does not argue that the codicil substituted an income right, only, for a right to be paid out of principal and income. As a trustee he recognized that he was bound by the direction to use principal to pay up to the $65,000 level. He argues though that the final sentence of the quoted text of the codicil limits to an *income* source the payments in excess of $65,000 annually. The argument is unsound. The income referred to in that final sentence is the income " of this fund *as thus augmented*," referring to the same fund of which the capital is made available to supplement income. Either this final sentence of the quoted text of the codicil constitutes a limitation upon the widow's rights in the " fund as thus augmented " — a limitation to income only on the whole fund — or else it must be read to mean a reiteration of deceased's purpose to assure his wife a fixed sum annually — $80,000 under the codicil. It is impossible to apply the sentence solely to the additional corpus and the income therefrom because its text refers to the original " fund as thus augmented " by the additions.

One might indulge in dialectic and find some justification for construing some of the quoted text in the codicil as departing in some measure from the absolutely clear text of the will and the equally clear text of most of the codicil. But when one scans the

text of will and codicil against the background of deceased's obvious purpose to provide a fixed minimum per annum for his wife there is no doubt that the whole text of the testator means that his wife was to have $80,000 per year in any event. The direction by deceased that his widow should receive payments from the income of the augmented fund to the full extent of $80,000 per year is not inconsistent with but is complementary to the direction that if in any year the net income were insufficient advances from principal must be made. Since the provisions for the wife are in the nature of an annuity, the court on application of the widow during her life would have had authority to increase the fund so as to assure payment to the widow out of income (*Griffen* v. *Keese*, 187 N. Y. 454; *Matter of Vanderbilt*, 229 App. Div. 574; *Matter of Bird*, 250 id. 848, affg. 157 Misc. 748), except that the direction to pay out of principal and the large quantum of principal on hand in this fund would make such action unnecessary for the widow's protection.

The court holds that under a proper construction of the will and codicil there was due to the widow of deceased the annual sum of $80,000. Any balance due the widow at the time of her death is now payable to her representatives.

Submit, on notice, decree construing the will and settling the account accordingly.