In the Matter of the Judicial Settlement of the Account of Proceedings of ROBERT E. TOD and CENTRAL HANOVER BANK AND TRUST COMPANY, as Trustees under the Seventeenth Clause of the Will and the Third Clause of the First Codicil to Said Will of JOHN KENNEDY TOD, Deceased.

ROBERT E. TOD, Appellant; GUY F. CARY and THE FIFTH AVENUE BANK OF NEW YORK, as Executors, etc., of MARIA KENNEDY TOD, Deceased, and THE FIFTH AVENUE BANK OF NEW YORK, as Ancillary Executor, etc., of MARIA KENNEDY TOD, Deceased, Respondents.

First Department, November 1, 1940.

*William G. Murphy*, for the appellant.

*E. Lacy Finnan* of counsel [*Shearman & Sterling*, attorneys], for the respondents.

COHN, J.   This is an appeal from a decree of the Surrogate's Court of New York County, construing the last will and testament of John Kennedy Tod, deceased, and settling the final account of proceedings of Robert E. Tod and Central Hanover Bank and Trust Company as trustees under the will.

The sole question presented concerns the extent to which the principal of a testamentary trust should have been invaded in order to make payments to the life beneficiary.

John Kennedy Tod, the testator, died on June 2, 1925, leaving a will and three codicils which were admitted to probate.   He was survived by his widow, Maria Kennedy Tod.   He left no descendants and his nearest relatives were brothers and sisters, among whom was Robert E. Tod, who was one of the accounting trustees and is also remainderman of the trust fund involved in this appeal by virtue of his designation in the will as a residuary legatee.

By the seventeenth clause of his will the testator bequeathed certain securities to the trustees, " to apply Sixty-five thousand dollars ($65,000) per annum out of the net income thereof not less frequently than semi-annually to the use and benefit of my said wife during her lifetime and to pay over the balance, if any, of such net income to said Robert Elliot Tod."   In the same clause he directed that the principal of the fund should be invaded for the benefit of his widow in case it should not produce in any year income amounting to $65,000, in the following words: " If in any year the net income of said trust fund payable to my wife shall be less than Sixty-five thousand dollars ($65,000), I direct my Trustees to advance out of principal to income sufficient to make good the deficiency; it being my desire and intention that from the time of my death my wife shall receive Sixty-five thousand Dollars ($65,000) per annum out of said trust fund, whether or not the net income thereof shall be sufficient for that purpose."   Nine months after he had made his will, the testator executed a codicil thereto under the third clause of which he made changes in the trust fund for

his wife, as follows: " In the Seventeenth Clause of my said will, I have left to my trustees various securities out of which and the income thereof my wife is to receive payments at the rate of sixty-five thousand dollars ($65,000) per year. I hereby increase the payments to be made therefrom to my said wife to the sum of eighty thousand dollars ($80,000) per year and in order to provide for such increased payments of fifteen thousand dollars ($15,000) per year, I hereby increase the corpus of said fund by such an amount as added to the securities referred to in said Seventeenth Clause will produce an annual income of eighty thousand dollars ($80,000) over and above the necessary and proper taxes, charges and expenses of said fund. Such addition to the corpus of said fund shall be in securities which shall be exempt to the fullest extent possible from all Federal and New York State income taxes, and if there be not sufficient of such securities in my estate, the same shall be purchased for this fund. My wife shall be entitled to receive payments from the income of this fund as thus augmented from the time of my death to the full extent of eighty thousand dollars ($80,000) per year."

The testator made other provisions for his wife. By a third codicil to the will he bequeathed her the sum of $200,000 payable immediately upon his death and made it a first charge against his estate. He also gave her a life interest in his real estate.

The trust fund as augmented produced $80,000 in income every year from the testator's death in 1925 through June 2, 1935, but thereafter produced less than $65,000 per annum. From June 2, 1935, to August 3, 1936, Mrs. Tod was paid at the rate of $80,000 per year though the fund did not produce this amount. After August 3, 1936, she received only $65,000 a year, any deficiency in income to that extent being satisfied by drawing upon the principal.

Mrs. Tod died on September 23, 1939, leaving a will under the terms of which her residuary estate was left to her two nieces. The executors of Mrs. Tod's will claim that under the will of her husband she was entitled to receive $80,000 in each and every year up to the date of her death and that the principal should be invaded to the extent that she was not paid such sum. Robert E. Tod, the appellant, contends that the principal should be invaded only in order to produce $65,000 a year and that the additional annual payment of $15,000 provided in the codicil was to be made out of income without any right to invade the principal. The learned surrogate found in favor of Mrs. Tod's executors and the decree awarded to them $58,350.46. Of this sum, approximately $11,000 is due under either interpretation, representing accrued income

up to the date of death of Mrs. Tod. The balance of approximately $47,000 is the amount involved in this dispute.

We are unable to find any provision in the will or in the codicil which directs that principal should be invaded beyond the sum of $65,000 a year. In erecting the original trust fund in the seventeenth clause of his will the testator specified with meticulous detail that principal should be invaded, if necessary, in order that his widow should receive $65,000 every year. When later he increased the fund in his first codicil he made no similar directions for increased invasions of principal. In the codicil there is no direction that if income should fall below the increased amount the trustees are " to advance out of principal to income sufficient to make good the deficiency." Nor is there any statement that the wife should receive the specified augmented income whether or not the net income of the fund should be sufficient for that purpose. If it had been the testator's intention that the increased fund should pay $80,000 every year to his wife and that the principal thereof should be invaded whenever income failed to produce this amount, it would have been a simple matter for him to have said so. The codicil contains not a single sentence or clause providing for the invasion of principal to supplement the original income. Since, here, the testator was so careful to authorize an invasion of principal when creating the original fund, his failure to use the same or similar language when increasing the fund and the widow's maximum income therefrom, clearly demonstrated that it was not his desire to have principal invaded except as originally provided in the will.

" ' In construing a will it has been repeatedly held that the object of the courts is to ascertain, not the intention simply, but the expressed intention, of the testator, i. e., the intention which the will itself, either expressly or by implication, declares. In other words, it is the duty of the court to ascertain the intention of the testator from the words he has used, and to ascertain and give effect to the legal consequences of that intention when ascertained.' " (*Matter of Silsby*, 229 N. Y. 396, 402. See, also, *Matter of Buechner*, 226 id. 440, 444.) The plan of the testator as gleaned from the language employed in the will and the codicil shows that the testator, in addition to the other provisions he had made for her, desired that his wife receive income up to a maximum of $80,000 a year and that in any event she was to receive a minimum payment of $65,000 a year, which minimum sum was to be made up by invasion of principal in the event that the income fell short of that amount. The general rule is that the principal of a trust fund must be preserved intact unless a contrary intention is set

forth in the very clearest manner. (*Matter of Stevens*, 187 N. Y. 471, 476. See, also, *Matter of Clarke*, 158 Misc. 830, 834.)

The gift of the residuary estate to Robert E. Tod should not be cut down except by definite and unambiguous language in the codicil. The interpretation urged by the widow's executors causes a decrease in the gift of the residuary estate for it requires an invasion of the principal of the trust fund whenever the income thereof falls below $80,000.

" Where there is an absolute gift of real or personal property, in order to qualify it or cut it down the latter part of the will should show equally clear intention to do so by use of words definite in their meaning and by expressions which must be regarded as imperative." (*Tillman* v. *Ogren*, 227 N. Y. 495, 505.) To the same effect are *Clay* v. *Wood* (153 N. Y. 134, 140); *Clarke* v. *Leupp* (88 id. 228, 231), and *Trask* v. *Sturges* (170 id. 482, 492).

For the foregoing reason we think that the decree of the Surrogate's Court, so far as appealed from, should be modified and the testator's will construed as directing an invasion of the principal of the trust fund only to the extent of assuring a fixed annual income therefrom of $65,000. The decree should accordingly be modified, with costs to the appellant payable out of the estate.

MARTIN, P. J., and DORE, J., concur; O'MALLEY and UNTERMYER, JJ., dissent and vote to affirm for the reasons stated in the opinion of the surrogate. (175 Misc. 222.)

Decree, so far as appealed from, modified and the testator's will construed as directing an invasion of the principal of the trust fund only to the extent of assuring a fixed annual income therefrom of $65,000, with costs to the appellant payable out of the estate. Settle order on notice.